922 F.2d 1146
 59 USLW 2435, Bankr. L. Rep. P 73,776
 In Re Charles G. RAYNOR, Sr., aka/dba fdba AAA Distributors
and Associates, New Bern Drag Strip, Inc., AMIS
Auto Supply, Auto Parts Distributors of
Havelock, Debtor.
M & M TRANSMISSIONS, INC., Plaintiff-Appellee,
v.
Charles G. RAYNOR, Sr., Defendant-Appellant.
 No. 89-3356.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 3, 1990.
Decided Jan. 10, 1991.
 
 Keith E. Fountain (argued), Lanier & Fountain, Jacksonville, N.C., for defendant-appellant; Gordon E. Robinson, Jr., on brief.
 Stephen Graham Inman (argued), Singleton, Murray & Craven, Fayetteville, N.C., for plaintiff-appellee; Ocie F. Murray, Jr., on brief.
 Before CHAPMAN and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The narrow issue in this appeal is whether the district court properly denied discharge of a debtor by accepting as res judicata a prior default judgment awarding damages for fraud. We conclude that the default judgment provides an insufficient basis for the denial of discharge. We reverse and remand the case with directions to the bankruptcy court to conduct an adversary evidentiary proceeding on the issue of fraud in order to decide whether the debtor should be discharged.
 
 
 2
 * M & M Transmissions, Inc. (M & M) contracted with AAA Distributors and Associates, Inc. (AAA) to purchase automobile repair equipment. Subsequently, M & M sued AAA and its agent, Charles G. Raynor, Sr., in a North Carolina court. Raynor engaged counsel to represent him and paid a retainer of $300. His counsel did not file a formal appearance or an answer.
 
 
 3
 The state court set the case for trial on October 2, 1986. During the preceding six months Raynor and his attorney did not have any contact. Just before trial the attorney attempted to phone Raynor twice but was unable to reach him. Since nobody answered Raynor's phone, his attorney left no message. On the day of the trial Raynor's attorney moved to withdraw. The trial court granted the motion. This left Raynor with no notice of the trial and no representation. The trial court entered a default judgment against AAA and Raynor jointly and severally in the sum of $226,000 for breach of contract and express and implied warranties, fraud, punitive damages, and unfair or deceptive trade practices. The trial court also awarded M & M a $15,000 attorney fee.
 
 
 4
 After receipt of a motion to claim exempt property, Raynor learned of the default judgment and his counsel's withdrawal. Raynor moved for relief from judgment, but the trial court denied his motion. Finding no abuse of discretion on the part of the trial court, the North Carolina Court of Appeals affirmed the judgment in part but remanded with directions that M & M elect a remedy under either the unfair trade practices claim or the fraud claim. M & M elected the fraud remedy, and the trial court entered judgment for breach of contract, fraud, and punitive damages in the amount of $144,000.
 
 II
 
 5
 Raynor voluntarily petitioned for bankruptcy. M & M filed a complaint initiating an adversary proceeding to determine whether Raynor should be discharged from the judgment debt. Raynor, represented by different counsel, filed an answer protesting that he had not had an opportunity to present his defense when the trial court entered judgment against him. M & M then filed a motion for summary judgment. Raynor filed an affidavit setting forth his version of the transaction, disputing the finding of fraud on which M & M's judgment was based.
 
 
 6
 The bankruptcy court stated that the only evidence it had in support of the motion for summary judgment was the record in the state district court. This included the complaint, the trial court's judgment, the trial court's order denying relief from judgment, and the court of appeals' opinion holding that the trial court did not abuse its discretion by denying Raynor's motion for relief from the judgment and remanding the case to require an election. M & M also presented a long list of Raynor's prior judgments.
 
 
 7
 The bankruptcy court properly held that North Carolina law and bankruptcy law were similar with respect to the elements of fraud and the standard of proof. It then concluded:
 
 
 8
 This court, in its own independent judgment, concludes that the determination that the defendant was guilty of fraud, rendered by the District Court of New Hanover County, North Carolina, was proper. In the interest of justice and judicial economy, this court chooses not to look behind the state court findings, but instead applies the doctrine of res judicata in refraining from relitigating those issues aptly disposed of in the lower court.
 
 
 9
 The bankruptcy court entered summary judgment for M & M in the amount of $226,000 and denied dischargeability.
 
 
 10
 Raynor appealed to the district court which, affirming the bankruptcy court, held that the default judgment was res judicata on the issue of fraud and that the debt was not dischargeable. It corrected the judgment entered by the bankruptcy court, reducing it to $144,000. This appeal followed.
 
 III
 
 11
 Brown v. Felsen, 442 U.S. 127, 128, 99 S.Ct. 2205, 2207, 60 L.Ed.2d 767 (1979), reiterates that although discharge is intended to provide the debtor with " 'a new opportunity in life,' " this opportunity is limited "to the 'honest but unfortunate debtor.' " (Citations omitted.) For this reason, the Act does not discharge an individual debtor from "any debt ... for money, property, [or] services ... to the extent obtained by false pretenses, a false representation, or actual fraud...." 11 U.S.C. Sec. 523(a)(2)(A) (1988). Brown v. Felsen in some respects is the converse of the controversy between M & M and Raynor, but the principles it explains are relevant. In that case the parties settled a suit by consenting to a judgment based on a stipulation. Neither the stipulation nor the judgment disclosed the nature of the liability of the debtor, who subsequently filed a petition for bankruptcy. The creditor sought to prevent the debtor's discharge on the ground of fraud. The debtor resisted, arguing that the judgment, which lacked any indicia of fraud, was res judicata. Reversing the court of appeals, the Court said:
 
 
 12
 Refusing to apply res judicata here would permit the bankruptcy court to make an accurate determination whether respondent in fact committed the deceit, fraud, and malicious conversion which petitioner alleges. These questions are now, for the first time, squarely in issue. They are the type of question Congress intended that the bankruptcy court would resolve.
 
 
 13
 442 U.S. at 138, 99 S.Ct. at 2212.
 
 
 14
 Brown v. Felsen does not preclude reliance on an underlying judgment in all cases concerning the question of discharge. This circuit's leading case, Combs v. Richardson, 838 F.2d 112 (4th Cir.1988), involved the question of discharge under Sec. 523(a)(6) for assault. The reasoning of the court clearly states the rule of this circuit:
 
 
 15
 We hold that the judgment debtor here may be precluded from relitigating an issue that was actually litigated and decided in an earlier proceeding and that was necessary to the decision. However, the determination that an issue was actually litigated and necessary to the judgment must be made with particular care. Here an examination of the jury instructions and verdict in the earlier tort action clearly demonstrates that the willful and malicious nature of [the debtor's] actions was actually and necessarily litigated.
 
 
 16
 838 F.2d at 113 (citation omitted).
 
 
 17
 We have consistently applied the principles explained in Combs. In Long v. West, 794 F.2d 928 (4th Cir.1986), the issue was whether a lump-sum payment was alimony or a property settlement. Examination of the instructions, the verdict, and the divorce decree showed that the parties litigated the issue, that the court instructed on the difference between alimony and a property settlement, and that the jury returned a verdict establishing that the payment was alimony. Consequently, we held that the bankrupt could not be discharged from the debt under Sec. 523(a)(5).
 
 
 18
 In Whitson v. Middleton, 898 F.2d 950 (4th Cir.1990), the issue was whether Sec. 523(a)(9) precluded discharge of a debtor from a state court default judgment arising out of a motor vehicle accident because the debtor's intoxication caused the accident. The debtor argued that since the judgment creditors' complaint in state court alleged only negligence, he was entitled to a discharge. The bankruptcy court properly rejected this argument and heard evidence proving that the debtor had been intoxicated. Its denial of a discharge was affirmed on appeal.
 
 
 19
 In re Myers, 52 B.R. 901 (Bankr.E.D.Va.1985), dealt with a controversy similar to the dispute between M & M and Raynor. The Commonwealth of Virginia obtained a default judgment in state court against Mr. and Mrs. Myers to recover the proceeds of hunting and fishing licenses that they sold as agents of the Commonwealth. After the Myers filed a petition in bankruptcy, the Commonwealth sought to preclude their discharge under Sec. 523(a)(4), which bars discharge of a bankrupt from debts incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." With respect to the issue of collateral estoppel, the bankruptcy court said:
 
 
 20
 The [Commonwealth] asserted that this Court should be bound by the issues determined in the state court proceeding, and that the debtor in this case is barred by the doctrine of collateral estoppel from denying there was a breach of fiduciary duty. However, the doctrine of collateral estoppel only precludes relitigation of issues actually and necessarily decided, and it is well established that a state court default judgment does not have collateral estoppel effect because it is not the result of actual litigation.
 
 
 21
 52 B.R. at 903-04 n. 1 (citations omitted). After hearing evidence, the bankruptcy court decided that the Myers' obligation was a simple debt, not defalcation or embezzlement, and granted discharge.
 
 
 22
 The common denominator of these four discharge cases is their recognition that an indispensable requirement of res judicata (more precisely, issue preclusion or collateral estoppel) is actual litigation of the issue. See Restatement (Second) Judgments Sec. 27 (1982). They illustrate the law of the circuit: To preclude a debtor from litigating an issue dispositive of discharge, the record of the case giving rise to the judgment debt must show that the issue was actually litigated and determined by a final valid judgment in an earlier proceeding and that it was necessary to the decision. Combs v. Richardson, 838 F.2d at 113; see also Restatement (Second) Judgments Sec. 27. Moreover, the bankruptcy court must determine whether the issue was actually litigated "with particular care." Combs v. Richardson, 838 F.2d at 113.
 
 IV
 
 23
 The record of the state court proceedings discloses that the issue of fraud was not actually litigated. Raynor was not aware of the proceeding. The court's findings of fact and conclusions of law supporting its judgment were prepared by M & M's counsel. The record contains no transcript of the evidence or depositions.
 
 
 24
 Raynor was present when the court heard his motion to be relieved of the judgment. The court found that Raynor was at fault because he failed to keep in touch with his counsel. It also found that he presented no meritorious defense to fraud. In the exercise of its discretion the court denied Raynor's motion for relief of the judgment. The issue of fraud was not actually litigated at the hearing on the motion. The record discloses no cross-examination of M & M's witnesses, and the court placed the burden of showing a defense to fraud on Raynor. This allocation of the burden of proof is contrary to the rule in bankruptcy that the party who challenges discharge--in this instance M & M--must prove the dispositive statutory factor for nondischarge. See Long v. West, 794 F.2d at 930.
 
 
 25
 In the state appellate court, the issue of fraud was not actually litigated. That court held that the trial court had not abused its discretion in denying relief from the default judgment. The error that the appellate court corrected in the judgment dealt with election of remedies and not with the question of the existence of fraud.
 
 V
 
 26
 Because the issue of fraud was not actually litigated, M & M cannot invoke the default judgment to bar Raynor's discharge by relying on res judicata or issue preclusion. See In re Myers, 52 B.R. at 903-04 n. 1; Restatement (Second) Judgments Sec. 27 comment e (default judgment cannot support issue preclusion).
 
 
 27
 The judgment of the district court is reversed, and this case is remanded with directions that the bankruptcy court conduct an evidentiary hearing on the issue of fraud to determine whether Raynor should be discharged.
 
 
 28
 REVERSED AND REMANDED.
 
 NIEMEYER, Circuit Judge, dissenting:
 
 29
 I believe the record of the North Carolina state court proceedings adequately demonstrates that, as the product of actual litigation, Raynor was adjudged to have obtained money by fraud when incurring the debt that he now seeks to discharge in bankruptcy. Therefore, I would affirm the judgment of the district court which concluded that the debt is not dischargeable.
 
 
 30
 The record in this case demonstrates that the defendant, Raynor, was served with process issuing from the North Carolina district court, in connection with a complaint filed by M & M Transmissions, Inc., charging him with breach of warranty, fraud and deceptive trade practices. J.A. 42. On receipt of suit papers he retained Donald E. Britt, Jr. as his counsel and paid him a retainer. Because settlement discussions were ongoing, Britt never entered his appearance formally, but there is no dispute that Britt acted as Raynor's attorney. Britt attended several meetings with Raynor and negotiated a settlement agreement on his behalf, which Raynor signed. J.A. 44. Because of difficulties in communication between Britt and Raynor and Raynor's refusal to abide by what he had undertaken to do, settlement failed and Britt withdrew his appearance before trial. J.A. 46-47.
 
 
 31
 When the case was called for trial on October 2, 1986, neither Raynor nor Britt appeared. The plaintiff, M & M Transmissions, did appear and presented testimony and documentation in support of its claim. J.A. 20. Approximately 45 days later the district court judge, Judge Charles E. Rice, entered findings of facts and conclusions of law based on the evidence presented. Whether or not the form of those findings was prepared by counsel, it is apparent that Judge Rice reviewed and adopted them. He signed them on November 17, 1986, J.A. 36, and reviewed them again at a post-judgment hearing at which Raynor and the attorneys involved testified. J.A. 37-41.
 
 
 32
 In the findings of fact Judge Rice confirmed that he heard testimony and received other evidence which detailed facts justifying fraud. Over some fifteen single-spaced pages, Judge Rice described how Raynor sold used equipment as new and how Raynor misrepresented to M & M Transmissions that he had purchased the equipment when in fact he had leased it without ever making payments on the lease. J.A. 18-34. Judge Rice found that Raynor made numerous misrepresentations about the source of the equipment, its financing, its value, its warranties and its capabilities. He concluded from the facts:
 
 
 33
 That the representations and statements of the defendant, Charles G. Raynor, individually and as agent for the Defendant AAA, were known by the Defendant, Raynor, to be false at the time the same were made to the Plaintiff, through its President, Milton M. Dobbins.
 
 
 34
 That said actions, representations and statements on the part of the Defendant, Charles G. Raynor, individually and as agent for the Defendant, AAA, were done with the intent to induce the Plaintiff to purchase and accept delivery of the machinery.
 
 
 35
 That the Plaintiff relied on these representations made by the Defendants, and said reliance was reasonable on the part of the Plaintiff.
 
 
 36
 That relying on such representations, the Plaintiff was induced to accept the machinery delivered to it by the Defendants.
 
 
 37
 That as a result of the fraud perpetrated on the Plaintiff by the Defendant, Raynor, individually and as agent for the Defendant, AAA, the Plaintiff has suffered damages in the sum of $50,000.00.
 
 
 38
 J.A. 35.
 
 
 39
 After the entry of judgment, Raynor appeared through another attorney and moved to set aside judgment on the ground that Raynor did not appear because he was unaware of the trial date. Judge Rice conducted another hearing in July 1987 at which Raynor personally testified on the issue of whether the judgment should be set aside and on any defense that he might have to the findings of fraud. Judge Rice concluded, on the completion of that hearing:
 
 
 40
 That nothing about this file, nor any of the evidence presented by the Defendants in support of the Motions filed herein, support[s] any finding of mistake, inadvertence, surprise or excusable neglect, or any other reason that would justify relief for the Defendants from the operation of the Judgment of October 2, 1986, filed on November 17, 1986.
 
 
 41
 That there does not appear, in pleadings filed herein, that the Defendants have a meritorious defense to this action, and the Court simply cannot find from the facts adduced at this hearing, that there is any meritorious defense, as the Defendants merely deny that they owe the Plaintiff any sum of money.
 
 
 42
 J.A. 47-48. In reaching his conclusions the trial judge observed that Raynor was no stranger to lawsuits, citing to eleven pages of judgments that had been entered against Raynor and his companies. J.A. 42. The court had earlier found that after suit was served on Raynor, he contacted the president of M & M Transmissions and told him to "take his best shot." Raynor further informed the president that any judgment against Raynor "would be meaningless." J.A. 31. It is noteworthy, moreover, that Judge Rice explicitly found that at the hearing in July 1987 Raynor was not truthful. J.A. 46.
 
 
 43
 The judgment of the district court of North Carolina was appealed to the Court of Appeals of North Carolina. In a written opinion affirming the district judge, the North Carolina Court of Appeals concluded that the district judge did not err in refusing to vacate the judgment. It stated:
 
 
 44
 The trial court's findings and conclusions contained in the order are amply supported by evidence in the record.... No meritorious defense can be found in the pleadings or facts adduced at the hearing to support their motion for relief from final judgment.
 
 
 45
 J.A. 52-53. The court observed that the trial court had found that the plaintiff "successfully proved its claim of fraud and also its claim of unfair and deceptive trade practices." J.A. 53. The court concluded, however, that based on North Carolina law, the plaintiff could not have a remedy for both actions and required the plaintiff to elect whether to proceed on the count for fraud or on the count for deceptive trade practices. J.A. 54-55. M & M Transmissions elected to proceed on fraud.
 
 
 46
 There can be no doubt that the judgment entered by the North Carolina state courts is based on the fraud of Raynor in misrepresenting the equipment that he sold to M & M Transmissions. The facts reveal that the fraud was pervasive and was repeatedly covered up by Raynor. Moreover, it was also the judgment of the North Carolina courts that Raynor's failure to appear for trial was no defense.
 
 
 47
 On this record the North Carolina judgment is a proper judgment for which due recognition may be given by a bankruptcy court. Although Raynor did not appear to present his own evidence and to cross examine, the judgment entered was based on duly admitted evidence at a scheduled trial. That Raynor did not appear may have been a matter of defense, but he raised that point and was permitted to present all the evidence he had available at a later hearing to justify his position, including evidence of any defense to the fraud claim. The court again ruled against him and an appellate court affirmed.
 
 
 48
 Collateral estoppel will bar relitigation of an issue previously decided if the party against whom the decision is asserted had "a full and fair opportunity" to litigate that issue in the earlier case. Allen v. McCurry, 449 U.S. 90, 94-95, 101 S.Ct. 411, 414-415, 66 L.Ed.2d 308 (1980). When applied to bankruptcy proceedings, the Supreme Court has admonished that res judicata effect will not be afforded dischargeability issues which could have been, but were not, litigated in an earlier proceeding. Brown v. Felsen, 442 U.S. 127, 138-39, 99 S.Ct. 2205, 2212-13, 60 L.Ed.2d 767 (1979). See also Combs v. Richardson, 838 F.2d 112, 115 (4th Cir.1988) (collateral estoppel bars relitigation of those issues actually and necessarily litigated).
 
 
 49
 Applying those principles here, I believe that the issues were actually and necessarily litigated and that, under the holding of Combs, Raynor should not now be given another opportunity to litigate them.
 
 
 50
 Accordingly, I respectfully dissent and vote to affirm.