PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

In Re: AHMAD ALI MASSOUD ANSARI,
Debtor.

REZA PAHLAVI; MEDINA DEVELOPMENT
COMPANY,                                                    No. 96-1519
Plaintiffs-Appellees,

v.

AHMAD ALI MASSOUD ANSARI,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-95-1423-A, BK-93-11245)

Argued: April 7, 1997

Decided: May 8, 1997

Before RUSSELL, WILKINS, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Russell and Judge Wilkins joined.

_____

COUNSEL

ARGUED: Steven Brett Ramsdell, TYLER, BARTL, BURKE &
ALBERT, P.L.C., Alexandria, Virginia, for Appellant. Robert Hough-

wout Loftus, MCCANDLISH & LILLARD, P.C., Fairfax, Virginia, for Appellees. **ON BRIEF:** Thomas P. Gorman, TYLER, BARTL, BURKE & ALBERT, P.L.C., Alexandria, Virginia, for Appellant.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

The question presented here is whether the district court properly held that a default judgment entered by a Virginia state court was entitled to collateral estoppel effect in a subsequent federal bankruptcy case. Because the law of the state where the original litigation occurred controls the preclusive effect of its judgments in federal court and because Virginia law would allow collateral estoppel in these circumstances, we affirm the judgment of the district court.

I.

In April 1990, Reza Pahlavi, the son and heir of the former Shah of Iran, and his corporation, Medina Development Company (collectively "Pahlavi"), filed suit against Pahlavi's former financial adviser, Ahmad Ali Massoud Ansari ("Ansari"), in the Circuit Court of Fairfax County, Virginia. Pahlavi asserted that Ansari had committed fraud and breached his fiduciary duties, and sought an accounting and damages. After the parties engaged in discovery, in February 1991, that court issued an order finding that Ansari did act as a fiduciary for Pahlavi and referring the case to a commissioner for an accounting.

The parties continued to engage in discovery and the Commissioner held numerous hearings. However, Ansari's dilatory tactics stalled any accounting. Eventually, on October 24, 1991, the state court issued an opinion letter, in which it found that Ansari had willfully disregarded multiple discovery orders and entered a default judgment for Pahlavi. The state court referred the case back to a commissioner for a calculation of compensatory damages; in doing so, the court ordered that all of the allegations in Pahlavi's complaint be taken as true.

2

Following more hearings, the commissioner issued a detailed report recommending that Pahlavi be awarded over six million dollars in compensatory damages. On September 2, 1992, after considering exceptions to that report, the state court confirmed it and awarded Pahlavi $7,277,425.56 in compensatory damages. Two months later, the state court held an evidentiary hearing as to punitive damages and at its conclusion awarded Pahlavi an additional $2,000,000 in punitive damages. The final decree awarding the compensatory and punitive damages was entered on February 26, 1993.

A month later, in March 1993, Ansari filed a petition for voluntary bankruptcy under Chapter 7. Pahlavi then filed this adversary proceeding in the bankruptcy case, seeking a declaration that the damages awarded in the state court judgment were non-dischargeable in the bankruptcy action.

The bankruptcy court granted Pahlavi summary judgment as to the compensatory damages award, finding that the award was entitled to collateral estoppel effect in the bankruptcy proceedings. The court concluded that the default judgment established that Ansari's debt to Pahlavi arose from fraud or defalcation, which Ansari committed while acting as a fiduciary to Pahlavi. Thus, the court held that the compensatory damage award was nondischargeable under 11 U.S.C. § 523(a)(4) (1994), which prohibits the discharge of any debt "for fraud or defalcation while acting in a fiduciary capacity." The court denied summary judgment as to the punitive damages award, finding that it needed further evidence to determine whether that award was also nondischargeable. The bankruptcy court then entered final judgment as to the compensatory damage award, staying all other claims pending resolution of the appeal of its determination on that issue. On appeal, the district court affirmed.

II.

Ansari maintains that the bankruptcy court and the district court erred in applying the collateral estoppel doctrine. He asserts that state court default judgments cannot act as collateral estoppel in subsequent federal bankruptcy dischargeability proceedings.

We have previously explored the proper approach to this question, explaining:

3

> In Grogan v. Garner, [498 U.S. 279, 284 & n. 11 (1991)]
> the Supreme Court concluded explicitly that principles of
> collateral estoppel apply in dischargeability proceedings in
> bankruptcy. In determining the preclusive effect of a state-
> court judgment, the federal courts must, as a matter of full
> faith and credit, apply the forum state's law of collateral
> estoppel. . . . "Congress has specifically required all federal
> courts to give preclusive effect to state-court judgments
> whenever the courts of the State from which the judgments
> emerged would do so."

Hagan v. McNallen (In re McNallen), 62 F.3d 619, 624 (4th Cir.
1995) (quoting Allen v. McCurry, 449 U.S. 90, 96 (1980)). Thus, in
order to determine whether the bankruptcy court correctly applied
collateral estoppel principles, we must examine the law of Virginia,
where the judgment relied upon originated.

A.

The Virginia Supreme Court recently defined the elements of col-
lateral estoppel in TransDulles Center, Inc. v. Sharma, 472 S.E.2d
274 (Va. 1996):

> For [collateral estoppel] to apply, the parties to the two pro-
> ceedings, or their privies, must be the same; the factual issue
> sought to be litigated actually must have been litigated in the
> prior action and must have been essential to the prior judg-
> ment; and the prior action must have resulted in a valid,
> final judgment against the party sought to be precluded in
> the present action. Glasco v. Ballard, [452 S.E.2d 854, 855
> (Va. 1995)]. Additionally, collateral estoppel in Virginia
> requires mutuality . . . .

TransDulles, 472 S.E.2d at 275.

Ansari does not dispute that the state court default judgment
against him meets the majority of Virginia's requirements for collat-
eral estoppel: identical parties, a valid, final judgment, and mutuality.
Ansari argues, however, that because the state court judgment was a

default judgment entered as a discovery sanction, the parties never "actually litigated" Ansari's fiduciary status or whether a defalcation occurred, and, in any event, determination of those issues was not "essential" to the state court's judgment.

In TransDulles, the Virginia Supreme Court discussed at length whether and under what circumstances a default judgment can be regarded as "actual litigation" of "essential" issues in a prior action for collateral estoppel purposes. Therefore, TransDulles controls our inquiry here.

In TransDulles, a landlord brought suit against a tenant for possession of commercial property and for delinquent rent and fees. TransDulles, 472 S.E.2d at 275. The tenant did not appear in court at the scheduled trial, and the landlord "presented testimonial evidence and exhibits in the tenant's absence." Id. The trial court entered a default judgment against the tenant for back rent and fees, as well as awarding possession to the landlord. Id. The tenant did not appeal and the judgment became final. Id. A year later the landlord sued the tenant again for the rent that had accrued under the lease since the previous judgment. The state court refused to apply collateral estoppel to the issue of the tenant's liability for the rent, and entered judgment for the landlord; it held that "a default judgment does not actually litigate issues for the purposes of collateral estoppel." Id.

On appeal to the Virginia Supreme Court, the tenant argued that, as evidenced by the Restatement of Judgments, "[a] default judgment cannot be used for collateral estoppel purposes, because no issues are `actually litigated.'" Id. at 276 (quoting United States v. Ringley, 750 F.Supp. 750, 759 (W.D. Va. 1990), and citing Restatement (Second) of Judgments § 27 cmt. e (1982)). The Virginia Supreme Court, however, expressly rejected the "view typified by the Restatement." TransDulles, 472 S.E.2d at 276. It concluded that "Virginia law does not support a blanket exemption from the application of collateral estoppel in the case of a default judgment." Id. The tenant also contended that because he had not personally appeared in court before entry of the default judgment, no issue had been actually litigated. Again, the Virginia Supreme Court "disagree[d] with the tenant's argument." Id. Rather, it reasoned that because "documentary evidence was presented ex parte in the district court hearing" the neces-

5

sary issues had been actually litigated. Id. Accordingly, the TransDulles court concluded that the default judgment did act as collateral estoppel in the second action, and reversed the trial court's contrary holding.

With controlling Virginia law in mind, we turn to the case at hand.

B.

In order to prove a debt is non-dischargeable under§ 523(a)(4) of the Bankruptcy Code, a creditor must prove the debtor committed "[1] fraud or defalcation [2] while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Ansari argues that neither of these issues were actually litigated in state court, let alone "essential" to the state court's judgment. He maintains that the only issue litigated in state court, and essential to its judgment, was whether he violated the court's discovery orders. Ansari is mistaken.

The question of whether Ansari acted as a fiduciary for Pahlavi was actually litigated and resolved early in the case. Pahlavi continually asserted that Ansari was his fiduciary and submitted documents and depositions to support this position. On February 7, 1991 -- eight months before entry of the default judgment -- the state court issued an order expressly finding that Ansari acted in a fiduciary capacity: "Ansari . . . was the fiduciary for the Complainant, Reza Pahlavi . . . at all times relevant to the Bill of Complaint." For this reason, the court granted Pahlavi's motion to refer the case to a commissioner for an accounting. Thus, the parties litigated Ansari's status as a fiduciary before the state court and that court decided the issue.

Similarly, the parties litigated, and the state court resolved, the question of Ansari's defalcation. A defalcation under 523(a)(4) is "misappropriation of trust funds or money held in any fiduciary capacity; [or the] failure to properly account for such funds." In re Niles, 106 F.3d 1456, 1460 (9th Cir. 1997) (quoting Black's Law Dictionary 417 (6th ed. 1990)). "[A] `defalcation' for purposes of this statute does not have to rise to the level of `fraud,' `embezzlement,' or even `misappropriation.'" Quaff v. Johnson, 4 F.3d 950, 955 (11th Cir. 1993) (citing Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510, 512 (2d Cir. 1937) (Learned Hand, J.)).

6

Pahlavi initiated the state court proceedings a year and a half before the entry of the default judgment. Prior to the default, multiple depositions were taken, many documents exchanged and the court and commissioner held numerous hearings in which Ansari appeared in person or by counsel. The principal focus of this effort was whether and to what extent Ansari, acting as Pahlavi's fiduciary, had defrauded Pahlavi or misappropriated funds from him. Only when it became clear that Ansari had refused to comply with discovery orders did the court broaden its inquiry into violations of its orders. In sum, there was much more evidence before the state court in this case than in TransDulles, and the parties here certainly engaged in more extensive and two-sided litigation of the relevant issues.

Further, determination of these issues -- whether Ansari was a fiduciary and whether he misappropriated funds -- was essential to the state court's judgment. The TransDulles court held that "the tenant's personal liability was essential to the district court judgment" because "[t]hat court could have merely awarded the landlord possession of the premises without imposing personal liability for rent and fees, but it did not." 472 S.E.2d at 276. Similarly, the state court here could have punished Ansari's discovery violations by imposing a fine based upon the time lost by Pahlavi's attorneys or the court, but it did not. Rather, it assessed compensatory damages against Ansari based on the exact amount that Ansari, as a fiduciary, was found to have misappropriated from Pahlavi. Thus, as in TransDulles, "the factual issue[s] existing in the present proceeding[fraud and fiduciary capacity], w[ere] a necessary part of the judgment in the prior proceeding." Id.

Moreover, even if the state court in this case had heard no evidence of fraud or defalcation before entering its default judgment against Ansari, the court's subsequent consideration and findings of punitive damages would certainly suffice for collateral estoppel purposes. The court awarded punitive damages to Pahlavi after finding "proof of misconduct or actual malice or such recklessness or negligence as to evince a conscious disregard of the rights of others." The state court's holding under this standard clearly includes the lesser finding of defalcation.

Ansari does not contend to the contrary. What Ansari argues is that findings made during the punitive damages proceedings cannot act as

7

collateral estoppel because, pursuant to the terms of the default judgment, all allegations in the complaint were taken as true. This argument overlooks the fact that in awarding punitive damages the state court did not rely solely on the allegations in the complaint. Rather, the court held a two-day hearing in which Pahlavi, Ansari, and other witnesses testified. At the conclusion of the hearing, the court weighed "the credibility of the witnesses to determine which version of what was testified to was persuasive," and recognized that "there [were] diametrically opposed positions on what occurred during almost ten years." The court expressly found "Mr. Pahlavi's evidence more credible" and found "misconduct," specifically "a pattern of conduct that occurred practically from the outset of the relationship between Mr. Pahlavi and Mr. Ansari."

Pahlavi and Ansari engaged in vastly more "actual litigation" of the critical issues in this case than did the landlord and tenant in TransDulles. The state court's findings on these issues were as essential to its judgment here as they were in TransDulles. Thus, the state court judgment in this case clearly meets the TransDulles requirements for collateral estoppel.

C.

Before concluding our discussion of collateral estoppel, we note that our conclusion finds support in decisions from two of our sister circuits and is in no way contrary to our holding in M & M Transmissions, Inc. v. Raynor (In re Raynor), 922 F.2d 1146 (4th Cir. 1991).

Recently, the Fifth, Eleventh, and Ninth Circuits have held that when a party has appeared and litigated a matter, a default judgment subsequently entered for discovery violations can act as collateral estoppel in a later case. See Gober v. Terra + Corporation (In re Gober), 100 F.3d 1195, 1205-06 (5th Cir. 1996) (fact that state court default judgment was entered "only after Gober had repeatedly impeded the course of the proceedings by refusing to comply with discovery and by defying court orders" bolstered court's conclusion that the bankruptcy court "properly afforded collateral estoppel effect" to the state default judgment); United States v. Robinson, 62 F.3d 1319, 1325 (11th Cir. 1995) ("Where a party has substantially participated in an action in which he had a full and fair opportunity

to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the [proceedings] a district court [may] apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior litigation."); FDIC v. Daily (In re Daily), 47 F.3d 365, 368 (9th Cir. 1995) ("A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication.").

Nor is Raynor contrary to our conclusion here. Raynor, like the case at hand, dealt with whether a state court default judgment for fraud could be used as collateral estoppel in a later bankruptcy dischargeability proceeding under 11 U.S.C. § 523(a)(2)(A) (1994). See 922 F.2d at 1148. There we refused to give a North Carolina state court default judgment collateral estoppel effect on the issue of fraud because "[t]he record of the state court proceedings discloses that the issue of fraud was not actually litigated. Raynor was not aware of the proceeding. The court's findings of fact and conclusions of law supporting its judgment were prepared by [plaintiff's] counsel. The record contains no transcript of the evidence or depositions." Id. at 1149.

Critical differences distinguish this case from Raynor. First, and most obviously, while Virginia law governs this case, North Carolina law controlled in Raynor. North Carolina, unlike Virginia, has never rejected the majority view stated in the Restatement that "[a] default judgment cannot be used for collateral estoppel purposes, because no issues are actually litigated." Restatement (Second) of Judgments § 27 cmt. e (1982). Indeed, examination of the briefs in Raynor indicates that no party suggested that North Carolina's law of collateral estoppel differed from the principle set forth in the Restatement. Furthermore, even if Virginia law had been applicable in Raynor, it is not at all clear that the result there would have been different. This is so because in Raynor, unlike the case at hand, the parties engaged in literally no litigation on the issue of fraud. See Raynor, 922 F.2d at 1149. Moreover, none of the policy concerns addressed by the Fifth, Eleventh, and Ninth Circuits in Gober, 100 F.3d at 1206, Robinson, 62 F.3d at 1325, and Daily, 47 F.3d at 368 would justify application

9

in <u>Raynor</u> of collateral estoppel. Thus, <u>Raynor</u> provides no assistance to Ansari here.

III.

Ansari advances two other non-meritorious arguments for reversal.

First, he maintains that the bankruptcy court made a crucial factual error in describing the timing of the state court's imposition of punitive damages. The bankruptcy court denied summary judgment as to the punitive damages award because it found punitive damages "were granted post-petition and were not enacted at that time." Ansari argues that this statement demonstrates that the bankruptcy court thought that only the punitive damages were awarded after the default judgment ("post-petition"), when actually <u>both</u> the compensatory and punitive damages were awarded after the entry of the default judgment. The bankruptcy court's reference to "post-petition" may only have been intended to signify that the punitive damages were awarded separately and after the compensatory damages. Even if the bankruptcy court did confuse the timing of the punitive damage award, the treatment of that award is not before us. The bankruptcy court evidenced no confusion as to the timing of the compensatory damage award and even if it had, Ansari has failed to demonstrate how such confusion would affect any legal conclusion at issue here.

Finally, Ansari asserts reversal is required because the bankruptcy court erroneously referred to "res judicata" in its oral ruling instead of collateral estoppel. The bankruptcy court did mention the wrong legal doctrine. Res judicata prohibits relitigation of an identical legal claim. <u>See Keith v. Aldridge</u>, 900 F.2d 736, 739 (4th Cir. 1990). Collateral estoppel, by contrast, bars relitigation of the same issue. <u>See Raynor</u>, 922 F.2d at 1149. Pahlavi's claim in the bankruptcy court -- that Ansari's debt to him is nondischargeable -- is certainly different from Pahlavi's claim in state court -- that Ansari defrauded Pahlavi and breached fiduciary duties owed to Pahlavi. Thus the correct preclusion principle in this case is collateral estoppel, and not res judicata.

However, the bankruptcy court's error in terminology is of no consequence since the court did not erroneously <u>apply</u> res judicata princi-

10

ples. The bankruptcy court did not hold that the state court default judgment barred the parties from relitigating the legal <u>claim</u> of dischargeability. Instead, the court properly applied collateral estoppel principles, holding that the state court had previously decided the legal <u>issues</u> of fiduciary status and fraud, and prohibiting the parties from relitigating those issues. Therefore, the bankruptcy court actually performed a collateral estoppel analysis, albeit characterizing it as res judicata. Because the bankruptcy court applied the correct analysis, its only error was one of semantics and provides no basis for reversal.

<u>AFFIRMED</u>

11