# CIRCUIT COURT OF ARLINGTON COUNTY

Airlines Reporting Corp.

v.

Auto-Owners Ins. Co.
and Sentinel Travel Bureau, Inc.

August 18, 2000

Case No. (Law) 00-148

BY JUDGE JOANNE F. ALPER

This matter comes before the Court on a Motion for Summary Judgment filed by plaintiff Airlines Reporting Corporation (henceforth "ARC"). After hearing oral argument on August 4, 2000, and carefully reviewing the pleadings, case law, and facts of this case, the Court sets forth its ruling below.

*Factual Background*

Plaintiff, ARC, serves as a national clearinghouse for issuing documents and other forms ("ARC traffic documents") to travel agents. These forms are used as air passenger tickets and other tour and travel documents by the travel agents to their customers. ARC maintains an agency list of persons and entities accredited to serve as travel agents and to issue ARC traffic documents. In order to be ARC accredited, an agent must submit a detailed application to ARC for approval and inclusion on the agency list. ARC enters into Agent Reporting Agreements ("ARA") with each of the accredited travel agents, which governs the issuance of the ARC traffic documents. As a condition of approval, an agent is required to obtain a surety bond in favor of ARC and the carriers as partial security for its performance.

Under the ARA, agents sell tickets to the public and remit the proceeds, minus their commissions, to ARC to distribute among the air carriers. The ARA directs agents to hold the tickets and the proceeds therefrom in trust.

Furthermore, the ARA requires that agents prepare weekly sales reports detailing all ARC traffic documents issued to the travel agent's clients during the previous Monday through Sunday. Based on these sales reports, the ARC area bank is then authorized to draw a check in the amount indicated on the travel agent's account in that amount, payable to ARC.

Occasionally, agents report sales to ARC for which the agents have failed to make funds available. This results in "Dishonored Drafts" when ARC attempts to debit their designated account. At other times, agents fail to report all of their sales and also fail to make payment therefor as required by the ARA. These are termed "Unreported Sales." Both types of conduct result in the default of the agent and loss to ARC.

On or about December 12, 1997, defendant Sentinel Travel Bureau, Inc. (henceforth "Sentinel") entered into an ARA with plaintiff ARC. As required, defendant Sentinel obtained a surety bond in the amount of $70,000 from co-defendant Auto-Owners Insurance Company (henceforth "Auto-Owners"). The agreement between the two defendants specified that Auto-Owners would act as the surety for Sentinel. The terms and conditions of the bond issued by Auto-Owners on behalf of Sentinel and in favor of ARC states in relevant part:

> [T]he Surety shall cover all amounts owed by the Principal to the carriers or to ARC for tickets or instruments of value issued on ARC traffic documents (in both paper or electronic format) unless the Principal is otherwise relieved of liability for such amounts owed pursuant to the terms of the ARA.

On or about March 18, 1998, ARC discovered that Sentinel failed or refused to make sufficient funds available from the area bank ("Dishonored Drafts") and notified Sentinel that it was in default. On April 2, 1998, the ARA between ARC and Sentinel was terminated. On February 25, 2000, ARC filed a Motion for Judgment against defendants Sentinel and Auto-Owners, seeking payment in the amount of $71,878.29. Sentinel failed to file an answer, motion, or other responsive pleading to the Motion for Judgment, and on June 2, 2000, this Court entered a default judgment against Sentinel in the amount of $71,878.29.

ARC claims that it is entitled to collect payment from Auto-Owners, as the surety for the bond. ARC claims that under the Surety Bond Agreement, the surety stands in the place of the principal and is liable for any default by the principal. Since judgment was granted against Sentinel (principal), ARC alleges that Auto-Owners is liable as a matter of law for the amount demanded

under the bond. ARC now moves for Summary Judgment against Auto-Owners.

### ARC'S Claim Against Auto-Owners

The central issue to be determined in this case appears to be one of first impression in Virginia. The Court is asked to determine the legal effect upon a surety of a default judgment entered against its principal.

ARC argues that it is entitled to judgment as a matter of law under the doctrine of collateral estoppel, since the liability of the principal has already been determined by this Court.

The Virginia Supreme Court recently defined the elements of collateral estoppel in *Transdulles Center, Inc. v. Sharma*, 252 Va. 20, 472 S.E.2d 274 (1996):

> For [collateral estoppel] to apply, the parties to the two proceedings, or their privies, must be the same; the factual issue sought to be litigated must have been litigated in the prior action and must have been essential to the prior judgment; and the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action. *Glasco v. Ballard*, [249 Va. 61, 452 S.E.2d 854, 855 (1995)]. Additionally, collateral estoppel in Virginia requires mutuality. . . .

*Transdulles*, 472 S.E.2d at 275.

Auto-Owners contends that a default judgment cannot be the basis for the application of collateral estoppel in Virginia. Defendant does not dispute that the judgment against it meets the majority of Virginia's requirements for collateral estoppel: identical parties, a valid, final judgment, and mutuality. Defendant argues, however, that because the judgment against Sentinel was a default judgment entered as a result of Sentinel's failure to respond to the Motion for Judgment, the parties never "actually litigated" the merits of the case. Under Virginia case law, an issue must have been the subject of *actual* litigation for collateral estoppel to apply. Auto-Owners maintains that, contrary to the requirements of collateral estoppel, nothing is actually litigated in a default judgment.

In *Transdulles*, the Virginia Supreme Court discussed at length whether and under what circumstances a default judgment can be regarded as "actual litigation" of essential issues in a prior action for collateral estoppel purposes. Therefore, *Transdulles* controls the Court's inquiry here.

In *Transdulles*, a landlord brought suit against a tenant for possession of commercial property and for delinquent rent and fees. *Transdulles*, 472 S.E.2d at 275. The tenant did not appear in court at the scheduled trial, and the landlord "presented testimonial evidence and exhibits in the tenant's absence." *Id.* The trial court entered a default judgment against the tenant for back rent and fees, as well as awarding possession to the landlord. *Id.* The tenant did not appeal and the judgment became final. *Id.* A year later the landlord sued the tenant again for the rent that had accrued under the lease since the previous judgment. The trial court refused to apply collateral estoppel to the issue of the tenant's liability for the rent, and entered judgment for the landlord, holding that "a default judgment does not actually litigate issues for the purposes of collateral estoppel." *Id.*

On appeal to the Virginia Supreme Court, the tenant argued that, as evidenced by the Restatement of Judgments, "[a] default judgment cannot be used for collateral estoppel purposes, because no issues are 'actually' litigated." *Id.* at 276 (quoting *United States v. Ringley*, 750 F. Supp. 750, 759 (W.D. Va. 1990)), and citing Restatement (Second) of Judgments, § 27, cmt. e (1982). The Supreme Court expressly rejected the "view typified by the Restatement." *Transdulles*, 472 S.E.2d at 276, concluding that "Virginia law does not support a blanket exemption from the application of collateral estoppel in the case of a default judgment." *Id.* The tenant also contended that because he had not personally appeared in court before entry of the default judgment, no issue had actually been litigated. Again, the Virginia Supreme Court "disagree[d] with the tenant's argument." *Id.* Rather, it reasoned that because "documentary evidence was presented *ex parte* in the district court hearing" the necessary issues had been litigated. *Id.* Accordingly, the *Transdulles* court concluded that the default judgment did act as collateral estoppel in the second action and reversed the trial court's contrary holding.

Clearly, under Virginia law, the preclusive effect of collateral estoppel *can* apply to default judgments. This precedent was relied on and followed by the United States Court of Appeals for the Fourth Circuit in *Pahlavi v. Ansari*, 113 F.3d 17 (4th Cir. 1997), where the Court held that a default judgment previously entered against a Chapter 7 debtor as a discovery sanction in a Virginia state court action collaterally estopped the debtor from arguing that the compensatory portion of the state court award represented debt incurred for debtor's "fraud or defalcation while acting in a fiduciary capacity." With controlling Virginia law in mind, the Court turns to the case at hand.

In this case, a default judgment was entered when defendant Sentinel failed to respond to ARC's Motion for Judgment. The Court has reviewed the bond obtained by Sentinel from Auto-Owners. According to the terms of the

bond, Auto-Owners agreed to act as surety for Sentinel. By definition, a surety is one who is primarily liable for the payment of another's debt or the performance of another's obligation. Furthermore, the bond plainly states on its face:

> [T]he Surety shall cover all amounts owed by the Principal to the carriers or to ARC for tickets or instruments of value issued on ARC traffic documents (in both paper or electronic format) unless the Principal is otherwise relieved of liability for such amounts owed pursuant to the terms of the ARA.

As set out in the Motion for Summary Judgment, Auto-Owners does not deny the validity of the policy or its liability thereunder. Accordingly, the default judgment entered against Sentinel is binding upon Auto Owners as surety as to liability, and Summary Judgment on this issue is appropriate. Auto-Owners stands in the place of Sentinel and is collaterally estopped from litigating the issue of liability in this case. However, collateral estoppel here only applies to the issue of liability. Auto-Owners is liable to ARC under the bond as a matter of law, but the issue of damages remains before the Court for trial.

In *Transdulles*, the Virginia Supreme Court reasoned that because "documentary evidence was presented *ex parte* in the district court hearing" the necessary issues had been litigated. *Transdulles*, 472 S.E.2d at 276. Likewise, in *Pahlavi*, the United States Court of Appeals for the Fourth Circuit reasoned that because "prior to the default, multiple depositions were taken, many documents exchanged, and the court and commissioner held numerous hearings in which defendant appeared in person or by counsel," the necessary issues had been litigated. *Pahlavi*, 113 F.3d at 21.

In this case, the issue of damages was never litigated between ARC and Sentinel. There was no hearing on damages prior to default, and the only evidence presented was an affidavit from an ARC employee. Relying on case law, the Court finds that this evidence alone does not rise to the level of "actual litigation," required to trigger the preclusive effect of collateral estoppel in Virginia. Accordingly, collateral estoppel does not bar litigation of damages in this case. The parties are free to litigate damages before the Court.

## Conclusion

Based on the foregoing, the Court grants summary judgment in favor of plaintiff ARC on the issue of liability. The Court will hear arguments on the issue of damages due plaintiff under the surety bond.