WILLIAMS, Chief Judge,
dissenting:
Until today, courts addressing the collateral-estoppel, or preclusive, effect of a default judgment entered as a sanction for refusal to comply with discovery orders have uniformly refused to give parties that have abused a prior judicial process a second bite at the apple. I disagree with the majority’s conclusion that the Supreme Court of North Carolina, if presented with the question, would be the first to reach a contrary result. In my view, the majority errs in seizing on prefatory language in two North Carolina decisions indicating that North Carolina applies the doctrine of collateral estoppel in its traditional form— except where it has opted not to do so by embracing the modern trend of abandoning the strict “mutuality of estoppel” requirement — and treating it as dispositive of the issue before us. Rather, a fair reading of North Carolina law suggests that a party who begins litigating an issue but ultimately forestalls its resolution on the merits by refusing to comply with discovery orders is collaterally estopped from relitigating that same issue. Accordingly, I respectfully dissent.[1]
*292 I.
Whether the doctrine of collateral estop-pel precludes Macik from contesting issues underlying the state-court default judgment presents a legal question that we review de novo in his on-going bankruptcy proceeding. See In re Duncan, 448 F.3d 725, 728 (4th Cir.2006) (explaining that because “[w]e review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court,” we “review findings of fact for clear error and questions of law de novo ”).
We have an obligation to afford “full faith and credit” to state acts and judicial proceedings. 28 U.S.C.A. § 1738 (West 2006). Accordingly, in deciding the preclu-sive effect of a state-court judgment, we must look to the law of the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect. In re Ansari, 113 F.3d 17, 19 (4th Cir.1997). Because the judgment here originated in North Carolina, we apply North Carolina’s law of collateral estoppel.
In applying North Carolina law, we treat the decisions of the state’s highest court, the Supreme Court of North Carolina, as controlling. If the Supreme Court of North Carolina has not yet resolved an issue, we must offer our best judgment about what that court would do. In so doing, “we may of course consider all of the authority that the state high court[ ] would, and we should give appropriate weight to the opinions of [the state’s] intermediate appellate courts.” Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 512 (4th Cir.1999); see also Castillo v. Emergency Med. Assocs., P.A., 372 F.3d 643, 648 (4th Cir.2004) (“When there is no decision by the highest state court, a federal court must apply what it finds to be the state law after giving proper regard to relevant rulings of other courts of the State.” (internal quotation marks and alteration omitted)).
The Supreme Court of North Carolina recognizes the doctrine of collateral estop-pel “as traditionally formulated.” Whitacre P’ship v. Biosignia, Inc., 358 N.C. 1, 591 S.E.2d 870, 880 (2004). Thus, it requires parties seeking to preclude relitigation of an issue to satisfy the same elements traditionally required for collateral estoppel to apply:
(1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.
State v. Summers, 351 N.C. 620, 528 S.E.2d 17, 20 (2000);[2] cf., e.g., Restatement (Second) of Judgments § 27 (1982) (“When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same *293 or a different claim.”). North Carolina has, however, “followed the modern trend in abandoning the strict ‘mutuality of es-toppel’ requirement [ (the requirement that both parties be bound by the prior judgment) ] for defensive uses of collateral estoppel.” Whitacre P’ship, 591 S.E.2d at 880.[3]
The Supreme Court of North Carolina has not yet spoken to the question presented in this case. We, however, have previously applied North Carolina’s law of collateral estoppel in the default-judgment context, holding in In re Raynor, 922 F.2d 1146 (4th Cir.1991), that a default judgment entered after one party failed to appear did not have preclusive effect in a subsequent proceeding because the issues in the case had not been actually litigated. See In re Raynor, 922 F.2d. at 1149 (explaining that “an indispensible requirement of ... issue preclusion or collateral estoppel[ ]is actual litigation of the issue,” which had not occurred because Raynor had not been aware of the proceeding). Thus, the narrow question facing us is whether the same result obtains where, as here, a party commences litigation but ultimately frustrates the resolution of an issue’s merits by refusing to comply with discovery orders.
Macik argues, and the majority agrees, that the Supreme Court of North Carolina would decide this question in keeping with the general rule expressed by comment e to Section 27 of the Restatement of Judgments that “[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.” Restatement 2d Judgments § 27 cmt. e. Because this conclusion stretches the language of the Restatement too far, I disagree.
The Restatement expressly contemplates only four circumstances giving rise to “issues which might have been but were not litigated and determined in [a] prior action”: (1) when “the defendant might have interposed [the issue] as an affirmative defense but failed to do so”; (2) when the issue “is raised by a material allegation of a party’s pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading”; (3) when the issue “is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial”; and (4) when the issue “is the subject of a stipulation between the parties.” Restatement 2d Judgments § 27 cmt. e. It explains that applying collateral estoppel in these circumstances could “serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.” Id. Further articulating the policy considerations underlying the “actual litigation” requirement, the Restatement notes that “[t]here are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action,” such as an inconvenient forum or a minimal amount in controversy; in addition, the interests underlying the preclusion doctrine — conserving judicial resources, maintaining consistency, and avoiding harassment — “are less compelling when the issue on which preclusion is sought has not actually been litigated before.” Id. The Restatement does not specifically address whether an issue should be considered “actually litigated” if a party commences litigation and declines to follow through on its contentions without aban *294 doning its adversarial posture. It does, however, acknowledge the possibility that “even if [an issue] was not litigated, the party’s reasons for not litigating in the prior action may be such that preclusion would be appropriate.” Id. This concession, in my view, shows that the Restatement view is not necessarily a bar to the application of collateral estoppel in this case.
Moreover, in addition to the Restatement, the Supreme Court of North Carolina might well seek guidance in the decisions of other jurisdictions. In so doing, it would find that every federal circuit court to consider the question has held that a default judgment entered as a sanction for refusal to comply with discovery orders has preclusive effect. See In re Ansari, 113 F.3d 17, 19 (4th Cir.1997) (applying Virginia law); In re Docteroff, 133 F.3d 210, 215 (3d Cir.1997) (federal law); In re Gober, 100 F.3d 1195, 1203-05 (5th Cir.1996) (Texas law); In re Bush, 62 F.3d 1319, 1323-25 (11th Cir.1995) (federal law); In re Daily, 47 F.3d 365, 368-69 (9th Cir.1995) (federal law). In each case, these courts “d[id] not hesitate in holding that a party ... who deliberately prevents resolution of a lawsuit[ ] should be deemed to have actually litigated an issue for purposes of collateral estoppel application.” In re Docteroff, 133 F.3d at 215.
Indeed, the most analogous North Carolina precedent on point, Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 349 S.E.2d 552 (1986), suggests that the Supreme Court of North Carolina would prove no more hesitant in this regard. Although Macik argues that an issue cannot be deemed actually litigated without a judgment on the merits, the Hall court did not take a particularly strict view of “actual litigation.” Instead, the Hall court held that an issue — entitlement to prejudgment interest — was actually litigated in a prior action where the plaintiff raised the issue in its pleadings and to the judge after the jury verdict, but the judge determined that it was an issue of fact that had been waived because the plaintiff had not requested that it be submitted to the jury. Id. at 557-58. The Hall majority reached this conclusion despite criticism from two justices, both of whom argued in a separate concurring opinion that the absence of a decision on the merits of the entitlement issue posed a bar to the application of collateral estoppel. Id. at 561-64 (Billings, C.J., concurring). The concurrence argued that the issue was not actually litigated because it was never determined that the plaintiff was not entitled to prejudgment interest, only that she had waived any right recover it. Id. at 562 (Billings, G.J., concurring). This contention, however, did not persuade a majority of the court.
Finally, there is no indication that, unlike the majority in this case and the other courts to consider this issue, the Supreme Court of North Carolina would prove unmoved by the “good policy reasons,” Majority Op. at 291, supporting application of collateral estoppel in this instance.[4] In my view, North Carolina’s high court would be no less reluctant to “encourage behavior similar to [Maeik’s] and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple.” Docteroff, 133 F.3d at 215.
II.
For the foregoing reasons, I respectfully dissent from the majority’s decision to re *295 verse the district court’s collateral estoppel ruling and remand for further proceedings.

. I agree with the majority that the Rooker-Feldman doctrine does not bar Macik from asserting defenses to Appellees' claim that debt arising from the North Carolina state court judgment is nondischargeable. The Supreme Court has made clear that the Roolcer-Feldman doctrine “is confined to cases of the kind from which the doctrine acquired its name; cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.” Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). It does not "otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or *292 dismiss proceedings in deference to state-court actions.” Id.

. The majority mistakenly treats State v. Summers, 351 N.C. 620, 528 S.E.2d 17, 20 (2000), as imposing “additional criteria” supplementing the requirement, outlined in Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 349 S.E.2d 552 (1986), that the issue in question be identical to an issue actually litigated and necessary to the judgment. Majority Op. at 287-88. Plainly, Summers simply uses a slightly different format to describe the same elements outlined in Hall.

. The majority emphasizes that the Supreme Court of North Carolina has not explicitly embraced any other "depart[ure] from the traditional rules of collateral estoppel.” Majority Op. at 288. Given that no other "modern trends” appear to have been presented for that court’s consideration, however, its silence on this front is hardly deafening.

. The majority volunteers that it would likely reach a different result if left to its own devices. See Majority Op. at 291 (explaining that the “good policy reasons [that] would seem to support a holding that gives collateral estoppel effect to at least some default judgments ... might well be dispositive”).