In re Alan D. SCHRIVER, III, Debtor.

Alan O. SCHRIVER, III,
Defendant/Appellant,

v.

VALLEY STREAM FINANCIAL
CORP., Plaintiff/Appellee.

Nos. 96–10578–MVB, 97–900–A.

United States District Court,
E.D. Virginia,
Alexandria.

Feb. 25, 1998.

Opinion Denying Rehearing
March 20, 1998.

Robert G. Mayer, Mayer & Scanlan, P.C., Fairfax, VA, for plaintiff/appellee.

Michael H. Doherty, Holmes, Rosenberg & Doherty, P.C., Arlington, VA, for defendant/appellant.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue in this bankruptcy appeal is whether either of two state court judgments are entitled to preclusive effect in a subsequent federal bankruptcy proceeding to determine the dischargeability of a judgment debt. More specifically, the questions presented are:

(1) whether a Pennsylvania court default judgment is entitled to collateral estoppel effect in a federal bankruptcy discharge proceeding; and

(2) whether a Virginia court final order denying a homestead exemption on the basis of the *res judicata* effect of a Pennsylvania judgment is entitled to collateral estoppel effect in a federal bankruptcy discharge proceeding.

### I.

On July 2, 1992, Valley Stream Financial Corporation ("Valley Stream") filed a three-count complaint against Alan Schriver ("Schriver") in the Court of Common Pleas of Montgomery County, Pennsylvania. The complaint asserted claims for breach of contract, conversion and fraud in connection with a sale-leaseback agreement allegedly entered into by the parties in 1990.[1] Valley Stream sought damages in the amount of $41,791.72 on all three counts, and punitive damages on its two tort claims.

From the outset, Schriver proved to be an uncooperative participant in the Pennsylvania action. Thus, Schriver initially failed to provide any answers to Valley Stream's interrogatories, and failed to produce requested documents. Then, in December 1992, Schriver disregarded the first of several court orders directing him to respond to Valley Stream's discovery requests. Only after the Pennsylvania court imposed a $200 sanction on Schriver in April 1993, and threatened him with a default judgment, did he begin to produce some of the requested materials. Yet, even then, Schriver's responses to the discovery requests were not adequate. Thereafter, in September 1993, Schriver failed to appear for a properly noticed deposition. When Schriver's failure to appear was brought to the Pennsylvania court's attention, an order was issued requiring him to appear and testify. Schriver ignored the order, and did not appear for deposition. In response, Valley Stream filed a motion for sanctions, requesting entry of judgment in its favor in the amount of $41,791.73, the amount alleged under all three counts of its complaint. The Pennsylvania court granted Valley Stream's motion for sanctions, and entered judgment against

---

**1.** Valley Stream's complaint alleged that the parties had entered into an agreement whereby Valley Stream purchased a 1989 Mercedes Benz automobile from Schriver for $31,000, and then leased it back to him. Under the terms of the written agreement, registration and title to the vehicle were to be taken in the name of Valley Stream, while Schriver would not acquire any right, title or interest in the vehicle other than that of a lessee. According to the complaint, Schriver ceased making the monthly payments on the lease, and then, after forging Valley Stream's signature on a duplicate title, sold the vehicle to an unknown third party.

Schriver in the requested amount. No evidence was adduced, and no findings were made with respect to Valley Stream's underlying claims. Further, no hearing was held and no findings were made with respect to attorney's fees, costs or interest. Nor did the Pennsylvania court address or determine the propriety or amount of punitive damages.

By Spring 1995, Schriver had relocated to Virginia and commenced employment at a Northern Virginia automobile dealership. Learning of this, Valley Stream domesticated its Pennsylvania judgment in the Circuit Court of Arlington County, Virginia, under the Uniform Enforcement of Foreign Judgments Act,[2] and caused a writ of garnishment to be issued on Schriver's Virginia wages. Schriver responded by filing a motion in the Arlington County Circuit Court claiming a homestead exemption from his judgment debt to Valley Stream. The Virginia homestead exemption, in addition to excluding certain property from creditor process, provides a debtor with limited relief from "a legally enforceable monetary obligation or liability ... whether arising out of a contract or otherwise, but not an obligation resulting from an intentional tort." Va.Code § 34–1. Schriver argued that because the Pennsylvania judgment was entered as a discovery sanction, and because no actual findings were made on Valley Stream's tort claims, he remained entitled to the exemption. This argument failed. Following oral argument on the effect of the Pennsylvania default judgment, the Arlington Circuit Court, by order dated May 26, 1995, rejected Schriver's claim, finding specifically that *res judicata* barred Schriver's homestead exemption claim

and that the Pennsylvania judgment involved an intentional tort.[3]

On February 8, 1996, Schriver filed a Chapter 7 [4] petition for voluntary bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division. Valley Stream then filed this adversary proceeding in the bankruptcy court, seeking a declaration that the judgment awarded in the Pennsylvania action was nondischargeable in bankruptcy. After a hearing on the matter, the bankruptcy court declared that Valley Stream's award from its Pennsylvania judgment was nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and (6).[5] Specifically, the bankruptcy court concluded that the Pennsylvania default judgment was entitled to collateral estoppel effect, and as such, the allegations of fraud and conversion in the Pennsylvania complaint were sufficient to preclude the discharge of Schriver's debt. The bankruptcy court also noted, without discussion, that the Arlington County Court judge had found that Schriver's debt to Valley Stream had resulted from his commission of an intentional tort. Accordingly, the bankruptcy court held the Pennsylvania judgment to be nondischargeable, and entered final judgment in favor of Valley Stream in the amount of $20,457.44.[6] Schriver appeals from this judgment.

## II.

Schriver contends that the bankruptcy court erred in granting collateral estoppel effect to the Pennsylvania state court default judgment. Specifically, because judgment was entered as a sanction for discovery

---

2. *See* Va.Code § 8.01–465.1 *et seq.*

3. After hearing oral argument, the state judge concluded, "[t]he Court finds that in this case the claim of the exemption is denied. The Court does believe that this was an intentional tort, and, as such, if it was, that based upon the laws the Court is understanding in Virginia, and notwithstanding what it says in Pennsylvania, that it would be *res judicata.*"

4. 11 U.S.C. § 701 *et seq.*

5. Prior to the hearing, Valley Stream voluntarily withdrew the dischargeability issues under § 523(a)(2)(A) (actual fraud), § 523(a)(2)(B)

(false financial statements), and § 523(a)(4) (only as to fraud in a fiduciary capacity). Thus, at the bankruptcy court hearing, the only applicable exceptions to discharge were § 523(a)(4) and (6), which provide that;

(a) A discharge under ... this title does not discharge an individual debtor from any debt—
(4) for ... embezzlement, or larceny;
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

6. At the time Schriver filed his Chapter 7 petition, Valley Stream had already recovered approximately $24,000.00, or over one-half of the judgment.

abuse, Schriver contends that none of the issues dispositive of discharge were actually litigated in the Pennsylvania action.

■ Although the doctrine of *res judicata*, or claim preclusion, does not apply to discharge proceedings in bankruptcy,[7] the related doctrine of collateral estoppel, or issue preclusion, may operate to bar relitigation of issues relevant to dischargeability. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). To determine the preclusive effect of a state court judgment, "federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel." *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir.1997) (citations omitted). Accordingly, federal courts give preclusive effect to state court judgments "whenever the courts of the State from which the judgments emerged would do so." *Id.* Thus, the propriety of giving preclusive effect to the Pennsylvania state court default judgment necessarily depends on Pennsylvania's law of collateral estoppel.

■ Under Pennsylvania law, the party against whom collateral estoppel is asserted must have had a full and fair "opportunity to appear and be heard in a prior proceeding involving the same subject matter." *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328, 333 (1975). Moreover, a party asserting the use of collateral estoppel must show that "the fact or facts at issue in both instances were identical; [and] that these facts were essential to the first judgment and were actually litigated in the first cause." *Id.* 336 A.2d at 334. An issue is "actually litigated" for collateral estoppel purposes only when it is properly raised by the pleadings, submitted for a determination, and actually determined. Restatement (Second) of Judgments § 27

cmt. d (1980).[8] Conversely, issues are not "actually litigated" if they merely could have been litigated and determined in the prior action, but were not. *Id.* at cmt. e. Thus, in Pennsylvania, a default judgment does not generally operate as a collateral estoppel in a separate cause of action because no "issues [are] . . . actually litigated within the scope of the collateral estoppel doctrine." *Martin v. Poole*, 232 Pa.Super. 263, 336 A.2d 363, 367 (Ct.1975); *See also* Restatement (Second) of Judgments § 27 cmt. e ("[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated").

■ These principles, applied here, compel the conclusion that the Pennsylvania court default judgment was not entitled to preclusive effect in the bankruptcy discharge proceeding. To prove that Schriver's debt was nondischargeable under the applicable portions of § 523(a)(4) and (6), Valley Stream had to prove that Schriver committed either (i) "embezzlement or larceny," or (ii) a "willful and malicious injury" to Valley Stream or its property. 11 U.S.C. § 523(a)(4) and (6). Even assuming for present purposes that these statutory exceptions raise issues identical to those raised in the Pennsylvania action,[9] it is clear that the remaining elements of Pennsylvania's test for collateral estoppel were not met: Because the Pennsylvania judgment was a default judgment entered as a discovery sanction, and because no evidence was presented on the underlying claims, the pertinent issues were never "actually litigated" within the meaning of the Restatement (Second) of Judgments § 27, which has been adopted as the law of Pennsylvania. Only the nature and extent of Schriver's discovery defaults were litigated in Pennsylvania. It follows then, that a Penn-

---

**7.** *Brown v. Felsen*, 442 U.S. 127, 132–38, 99 S.Ct. 2205, 2209–13, 60 L.Ed.2d 767 (1979).

**8.** Pennsylvania courts follow the Restatement (Second) of Judgments § 27 in determining when to allow issue preclusion. *See GPU Indus. Intervenors v. Pennsylvania Pub. Util. Comm'n*, 156 Pa.Cmwlth. 626, 628 A.2d 1187, 1192–93 (1993); *See also Schubach*, 336 A.2d at 333 (adopting Restatement, Judgments, § 68, which has been superseded by the Restatement (Second) of Judgments § 27).

**9.** Valley Stream's complaint alleges fraud and conversion in connection with Schriver's unauthorized sale of the Mercedes Benz. Whether these allegations, taken as true, would meet the requirements for nondischargeability under 11 U.S.C. § 523(a)(4) or (6) need not be decided given Valley Stream's inability to satisfy the other requirements for the operation of collateral estoppel under Pennsylvania law.

sylvania court would not have given collateral estoppel effect to the default judgment. And, because the bankruptcy court was required, as a matter of full faith and credit, to apply Pennsylvania's law of collateral estoppel,[10] it further follows that the bankruptcy court was not entitled to give collateral estoppel effect to the default judgment. Accordingly, it erred in doing so.

Seeking to avoid this result, Valley Stream notes that the Ninth and Eleventh Circuits under similar circumstances have applied collateral estoppel to bar relitigation of issues said to underlie default judgments entered as a sanction for discovery abuses. *See FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir.1995); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1324 (11th Cir.1995).[11] Specifically, *Daily* and *Bush* found that the "actual litigation" requirement of collateral estoppel may be satisfied by "substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." *Id.* Like *Daily* and *Bush*, Schriver did not yield at the outset, but rather participated, albeit uncooperatively, for over a year before a default judgment was entered as a sanction. Yet, neither case is apposite or persuasive here, for neither dealt with the preclusive effect to be given a default judgment entered by a Pennsylvania state court. Instead, both *Daily* and *Bush* involved the preclusive effect of default judgments entered by federal district courts. *See Daily*, 47 F.3d at 368; *Bush*, 62 F.3d at 1324. Moreover, the Eleventh Circuit specifically acknowledged its holding in *Bush* to be inconsistent with the view typi-

fied by the Restatement comment that "[i]n the case of a judgment entered by ... default, none of the issues is actually litigated." *Bush*, 62 F.3d at 1323 (quoting Restatement (Second) of Judgments § 27 cmt. e). Thus, however appealing the result reached in *Bush* and *Daily* may be,[12] there is nothing to suggest that a Pennsylvania court would abandon its long-standing adherence to the law of collateral estoppel as enunciated in the Restatement.[13]

Moreover, assuming *arguendo* that the issues pertinent to dischargeability, namely Schriver's alleged commission of fraud and conversion, were "actually litigated" in the Pennsylvania action, they were not "essential to the first judgment" as required under the Pennsylvania law of collateral estoppel. *Schubach*, 336 A.2d at 333. Judgment was entered solely as a sanction for discovery abuse, with no evidence heard and no findings made on Valley Stream's underlying claims. Further, Valley Stream was awarded $41,791.73, the amount alleged under all three counts of its complaint, including the breach of contract count. And, there was no hearing on punitive damages, and no punitive damages were awarded. Thus, the allegations of fraud and conversion in the Pennsylvania complaint were simply not essential to the default judgment entered in that action. Accordingly, because the issues dispositive of discharge were not "actually litigated" in the Pennsylvania action, and because, alternatively, they were not essential to the Pennsylvania judgment, the bankruptcy court erred in giving collateral estoppel effect to the default judgment.[14]

---

**10.** *See Ansari,* 113 F.3d at 19.

**11.** Indeed, the bankruptcy court in the instant case relied specifically on the *Bush* decision in finding Schriver's Pennsylvania judgment debt nondischargeable.

**12.** These decisions avoid giving the defaulting party an apparently unjustified "second bite at the apple." *See infra* note 15.

**13.** On this basis, the instant case is also distinguishable from a recent Fifth Circuit decision holding, after applying the Texas collateral estoppel rule, that a "post-answer default judgment" may satisfy the "actually litigated" prong of collateral estoppel. *See Garner v. Lehrer (In re Garner),* 56 F.3d 677, 680 (5th Cir.1995). Under

Texas law, where a defendant has answered but fails to appear at trial (a "post-answer default judgment"), judgment cannot be entered on the pleadings, but rather the "plaintiff ... must offer evidence and prove his case as in a judgment upon a trial." *Id.* at 680. Thus, while Texas courts also follow generally the Restatement (Second) of Judgments § 27, the procedure mandated by Texas law in the case of a post-answer default is such that the resulting judgment may be deemed in Texas to satisfy the Restatement's "actually litigated" requirement. *Id.* In the instant case, of course, no evidence on the merits was offered, and no findings were made as to any issues underlying Valley Stream's claims.

**14.** Valley Stream contends that because the Pennsylvania default judgment was domesticated in Virginia state court, it is entitled to invoke

Arguably, strict adherence to the Restatement's collateral estoppel requirements produces, in the instant case, a result that is both wasteful of judicial resources and unfair to Valley Stream.[15] Yet, Pennsylvania, in its firm adherence to the Restatement rule on collateral estoppel, must be deemed to have found the disadvantages of such a result to be outweighed by the policies underlying the Restatement rule.[16] And, full faith and credit compels a federal bankruptcy court in another state to respect Pennsylvania's policy choice. *See Ansari*, 113 F.3d at 19. Moreover, the result reached here is consistent with the policy underlying the federal Bankruptcy Code to the effect that dischargeabili-

ty questions be resolved only after the "fullest possible inquiry." *Combs v. Richardson*, 838 F.2d 112, 114–15 (4th Cir.1988) (federal policy underlying discharge and its statutory exceptions require that the conditions necessary for issue preclusion be addressed with special care). It is the recognition of precisely this policy that explains the unavailability of *res judicata* in discharge proceedings. *See Brown v. Felsen*, 442 U.S. at 132–38, 99 S.Ct. at 2209–13.[17] In any event, as noted, adherence to the Restatement's law of collateral estoppel is, in the instant circumstances, required as a matter of according full faith and credit to the laws of Pennsylvania. *See Ansari*, 113 F.3d at 19.

Virginia's law of collateral estoppel to support the preclusive effect of the Pennsylvania default judgment. Yet, even assuming that domestication of the Pennsylvania judgment in Virginia produced a new judgment, independently entitled to collateral estoppel effect under Virginia law, the result reached here is unaltered because Virginia collateral estoppel law, like Pennsylvania law, requires that the pertinent factual issues be "actually litigated" and essential to the prior judgment, the default judgment. *See TransDulles Center, Inc. v. Sharma*, 252 Va. 20, 472 S.E.2d 274, 275 (1996); *See also infra* notes 20–22 and accompanying text. The Pennsylvania judgment satisfies neither requirement; no evidence was adduced, ex parte or otherwise, concerning Valley Stream's claims of fraud and conversion, and the claims were not essential to the default judgment.

**15.** As the Eleventh Circuit stated in *Bush*, "[w]e also are reluctant to allow this debtor a second bite at the apple ... It would be fundamentally unfair to force [the creditor] to spend time and money preparing the same discovery simply because [debtor] has determined that he now wishes to defend the allegations of fraud and avoid his judgment debt in bankruptcy court." 62 F.3d at 1324–325. The bankruptcy court, in declaring Schriver's judgment debt nondischargeable, was clearly attentive to these concerns. In this regard, however, it is worth noting that the unfairness to creditors can be overstated. To be sure, creditors with a default judgment may find it difficult to prove their claims if forced to do so months or years later in a discharge proceeding. Yet, creditors with default judgments should anticipate this possibility and take steps to preserve essential evidence of the defaulted, nondischargeable claims. Also, in those jurisdictions, such as Texas, where there is a relaxed "actually litigated" requirement for collateral estoppel, creditors should take care to meet the relaxed re-

quirement, which in some instances may mean adducing the evidence before the court with a request that formal findings be made and entered. *See supra* note 13.

**16.** No Pennsylvania cases were cited or found deviating from the Restatement rule. But also worth noting is that no Pennsylvania cases were cited or found on precisely these facts, namely a case in which a default judgment is entered as a discovery sanction following some period of litigation. No Pennsylvania court seems to have considered whether the Restatement rule should be relaxed on such facts. Given this, it may be argued that a federal court is free to "guess" that a Pennsylvania court would decide to relax the Restatement rule in these circumstances. Because nothing in Pennsylvania case law invites or predicts such a relaxation, federal courts in these circumstances should refrain from expanding or modifying state law. *See St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995) (federal courts rule upon the law of a state as it exists, and should neither expand that law nor create new law).

**17.** In *Brown*, the Supreme Court found that preventing the application of *res judicata* would enable "the bankruptcy court to make an accurate determination whether [the debtor] in fact committed the deceit, fraud, and malicious conversion which [the creditor] alleges. These questions are now, for the first time, squarely in issue. They are the type of question Congress intended that the bankruptcy court would resolve." 442 U.S. at 138, 99 S.Ct. at 2212. Similarly, it follows that bankruptcy courts must make "a careful and considered determination that the issue was actually litigated and necessary to the earlier decision" before applying the doctrine of collateral estoppel in a discharge proceeding. *Combs*, 838 F.2d at 116.

In sum, because the issues of fraud and conversion were not actually litigated, Valley Stream cannot invoke the Pennsylvania default judgment to bar Schriver's discharge by relying on collateral estoppel.

## III.

Yet, this conclusion does not end the analysis, as the Pennsylvania state court default judgment was not the only state court judgment relevant to this bankruptcy proceeding. Rather, following the entry of the default judgment, and the issuance of a writ of garnishment on Schriver's Virginia wages, Schriver sought statutory relief from the garnishment by seeking a homestead exemption in a Virginia state court.[18] Following oral argument, the Virginia state court held that *res judicata* barred Schriver's claim. Conceding, as it must, that *res judicata* cannot operate here to achieve the same result,[19] Valley Stream contends instead that the Virginia judgment is entitled to collateral estoppel effect in bankruptcy, thereby precluding the discharge of Schriver's debt pursuant to 11 U.S.C. § 523(a)(4) and (6). Analysis of this claim requires an application of Virginia's law of collateral estoppel.[20]

■■■ Virginia's collateral estoppel law is similar in many respects to Pennsylvania law. Thus, for the doctrine to apply in Virginia, as in Pennsylvania,

> the parties to the two proceedings, or their privies, must be the same; the factual issue sought to be litigated actually must have been litigated in the prior action and must have been essential to the prior judgment; and the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action.

*TransDulles,* 472 S.E.2d at 275. But, while Virginia and Pennsylvania law on collateral estoppel are substantially similar, there is an important difference. Virginia law, unlike Pennsylvania law, does not support a "blanket exemption from the application of collateral estoppel in the case of a default judgment." *Id.* 472 S.E. 2d at 276. Rather, Virginia has found the "actually litigated" element of collateral estoppel to be satisfied, despite a defaulting party's absence from the proceedings, where testimonial and documentary evidence on the necessary issues are presented ex parte. *Id.* In such circumstances, it can be said that Virginia does not adhere to the view typified by the Restatement comment that "in the case of a judgment entered by ... default, none of the issues is actually litigated." *Id.* (quoting Restatement (Second) of Judgments, § 27 cmt. e). Nevertheless, actual litigation remains an essential element of collateral estoppel in Virginia, such that a default judgment will not support its application where there is literally no litigation on the relevant issue. *See Horton v. Morrison,* 248 Va. 304, 448 S.E.2d 629, 631 (1994).

■■■ As it happens, this distinction is one without consequence here because it is clear that the Virginia state court judgment is similarly not entitled to preclusive effect in this bankruptcy proceeding. Specifically, in order to prove that Schriver's debt is nondischargeable under the applicable portions of § 523(a)(4) and (6), Valley Stream must prove that Schriver committed either (i) "embezzlement or larceny," or (ii) a "willful and malicious injury" to Valley Stream or its property. 11 U.S.C. § 523(a)(4) and (6). And, again, even assuming, *arguendo,* that these discharge exceptions raise an issue identical to that raised in the Virginia action, namely whether Schriver committed an intentional tort, the issue was not actually litigated in Virginia state court. Thus, no evidence was offered there, ex parte or otherwise, and no factual findings were made concerning Valley Stream's Pennsylvania claims of fraud and conversion.[21]

---

18. The Virginia homestead exemption provides a debtor with limited relief, up to $5,000, from monetary obligations provided that they do not arise or result from the commission of an intentional tort. Va.Code § 34–4.

19. *See Brown v. Felsen,* 442 U.S. at 132–138, 99 S.Ct. at 2209–13 (*res judicata* inapplicable in federal bankruptcy discharge proceedings).

20. *See Ansari,* 113 F.3d at 19 (federal courts must apply the forum state's law of collateral estoppel).

21. Although the Virginia state court judge noted in reference to the Pennsylvania action that "this was an intentional tort," this statement is not entitled to the status of a finding. At the Virginia state court hearing, Valley Stream relied solely

Rather, the Virginia state court's decision denying Schriver's claim for a homestead exemption was based solely upon the application of *res judicata*. Simply put, the Pennsylvania judgment precluded Schriver, through application of *res judicata*, from denying the commission of an intentional tort while seeking relief from the Pennsylvania judgment in the Virginia court. Thus, although Virginia embraces a broader conception of whether a necessary issue has been "actually litigated," the Virginia state court's application of *res judicata* does not satisfy the "actually litigated" requirement for the application of collateral estoppel.[22] Accordingly, the Virginia state court judgment denying Schriver's claim for a homestead exemption is not entitled to preclusive effect in the bankruptcy proceeding.

Accordingly, the judgment of the bankruptcy court declaring Schriver's judgment debt nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4) and (6) is reversed, and this case is remanded for further proceedings consistent with this Opinion.

An appropriate order will issue.

## MEMORANDUM OPINION ON REHEARING

This matter is before the Court on Valley Stream Financial Corporation's ("Valley Stream") motion for a rehearing following the Court's decision reversing and remanding a final order of the bankruptcy court

on the Pennsylvania record (i.e. the complaint, the motion for sanctions, the default judgment, etc.) in objecting to Schriver's claim for a homestead exemption. Though counsel for Valley Stream proffered testimony as to the facts underlying the Pennsylvania transaction, Schriver's counsel contested that version, specifically denying the existence of a valid agreement, or the perpetration of an unauthorized sale. Given the insufficiency of the record, it seems clear that the Virginia state court's denial of the homestead exemption was based solely on the *res judicata* effect of the Pennsylvania judgment, and not on an independent finding of fact by the Virginia state court.

**22.** Moreover, applying collateral estoppel to the Virginia state court judgment, which was based on the *res judicata* effect of the Pennsylvania judgment, would be akin to the bankruptcy court

declaring Alan Schriver's judgment debt to be nondischargeable in bankruptcy.[1] Specifically, this Court held, in pertinent part, that a Pennsylvania state court default judgment was not entitled to collateral estoppel effect in the federal bankruptcy discharge proceeding. *Schriver*, 218 B.R. at 801–02.[2] Accordingly, the Court remanded the matter to the bankruptcy court to determine, without relying on collateral estoppel, whether Schriver's judgment debt was nondischargeable in bankruptcy. Valley Stream's motion for a rehearing contends that:

(1) Pennsylvania law (i.e., the Restatement) does support the exception to the "actually litigated" requirement in the case of a default judgment entered as a discovery sanction; and

(2) the record contains documentary evidence of embezzlement and willful and malicious injury, upon which the bankruptcy court made express findings, sufficient to support its nondischargeability determination under 11 U.S.C. § 523(a)(4) and (6).

Additionally, Valley Stream moves this Court pursuant to Rule 8017(b), Fed. R. Bankr.P., for an order staying its judgment for thirty days pending an appeal to the Fourth Circuit. For the reasons that follow, Valley Stream's motion for a rehearing is denied, but its motion for a stay pending appeal is granted.[3]

itself granting *res judicata* effect to the Pennsylvania judgment, which is forbidden by *Brown v. Felsen*, 442 U.S. at 132–38, 99 S.Ct. at 2209–13. The result reached here precludes an end around *Brown*.

**1.** *Schriver v. Valley Stream Financial Corp.*, 218 B.R. 797, 804–805 (E.D.Va.1998).

**2.** The Court also held that a Virginia state court final order denying a homestead exemption on the basis of the *res judicata* effect of the Pennsylvania judgment was also not entitled to collateral estoppel effect in the federal bankruptcy discharge proceeding. *Schriver*, 218 B.R. at 804.

**3.** It appearing that the facts and legal arguments are adequately presented in the materials before the court, oral argument is dispensed with in the instant matter.

## I.

To determine the preclusive effect of a state court judgment, "federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel." *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir.1997) (citations omitted). This principle, as restated in *Ansari*, was well-settled in the Fourth Circuit long prior to the bankruptcy court hearing in this matter. *See Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 624 (4th Cir.1995).[4] Thus, the propriety of giving preclusive effect to the Pennsylvania state court default judgment necessarily depends on Pennsylvania's law of collateral estoppel.

Under Pennsylvania law, a party asserting the use of collateral estoppel must show that "the fact or facts at issue in both instances were identical; [and] that these facts were essential to the first judgment and were actually litigated in the first cause." *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328, 334 (1975). Issues are not "actually litigated" for collateral estoppel purposes if they merely could have been litigated and determined in the prior action, but actually were not. Restatement (Second) of Judgments § 27 cmt. e (1980).[5] Thus, in Pennsylvania, a default judgment does not generally operate as a collateral estoppel in a separate cause of action because no "issues [are] ... actually litigated within the scope of the collateral estoppel doctrine." *Martin v. Poole*, 232 Pa.Super. 263, 336 A.2d 363, 367 (1975); *See also* Restatement (Second) of Judgments § 27 cmt. e ("[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated"). These principles, applied here, compel the conclusion that the Pennsylvania court default judgment was not entitled to preclusive effect in the bankruptcy discharge proceeding. Valley Stream's attempts to avoid this result are unavailing.

First, Valley Stream cites *Fox v. Gabler*, 534 Pa. 185, 626 A.2d 1141 (1993), for the proposition that collateral estoppel's "actually litigated" requirement is satisfied where, as here, a judgment by default is entered as a sanction for failure to respond adequately to discovery requests. Yet, Valley Stream is mistaken; it conflates the distinct doctrines of *res judicata* and collateral estoppel and hence misuses *Fox*. *Fox* merely states the well-settled rule that for *res judicata* purposes, a judgment by default is "quite as conclusive as one rendered on a verdict after litigation insofar as a defaulting defendant is concerned." *Id.* at 1143. Thus, as between the two parties, the judgment is "final and conclusive." Id. The rule is not limited to cases where a judgment by default is entered as a sanction for discovery abuse, but rather, it is equally applicable where a default judgment is entered based on a party's failure to appear. *See Poole*, 336 A.2d at 367. And, of course, the rule does not alter the fact that for *collateral estoppel* purposes, a default judgment will not be given preclusive effect in a subsequent cause of action because no "issues [are] ... actually litigated within the scope of the collateral estoppel doctrine." *Poole*, 336 A.2d at 367.

Next, Valley Stream relies on a Fifth Circuit decision holding, after applying the Texas collateral estoppel rule, that a "post-answer default judgment" may satisfy the "actually litigated" prong of collateral estoppel. *See Garner v. Lehrer (In re Garner)*, 56 F.3d 677, 680 (5th Cir.1995). Yet, in its February 25, 1998 Memorandum Opinion, the Court specifically noted the distinction between the instant case and *Garner*. To reiterate:

> [u]nder Texas law, where a defendant has answered but fails to appear at trial (a "post-answer default judgment"), judgment cannot be entered on the pleadings, but rather the "plaintiff ... must offer evidence and prove his case as in a judg-

---

4. Valley Stream suggests that *Ansari*, which was decided after the bankruptcy court hearing, announced a new rule. It did not.

5. Pennsylvania courts follow the Restatement (Second) of Judgments § 27 in determining when to allow issue preclusion. *See GPU Indus.*

*Intervenors v. Pennsylvania Pub. Util. Comm'n*, 156 Pa.Cmwlth. 626, 628 A.2d 1187, 1192–93 (1993); *See also Schubach*, 336 A.2d at 333 (adopting Restatement, Judgments, § 68, which has been superseded by the Restatement (Second) of Judgments § 27).

ment upon a trial." [*Garner*, 56 F.3d at 680]. Thus, while Texas courts also follow generally the Restatement (Second) of Judgments § 27, the procedure mandated by Texas law in the case of a post-answer default is such that the resulting judgment may be deemed in Texas to satisfy the Restatement's "actually litigated" requirement. *Id.* In the instant case, of course, no evidence on the merits was offered, and no findings were made as to any issues underlying Valley Stream's claims.

*Schriver*, 1998 WL 81638, at *6 n. 13. Accordingly, Valley Stream's reliance on *Garner* is misplaced.

Finally, despite the view typified by the Restatement comment that "[i]n the case of a judgment entered by . . . default, none of the issues is actually litigated,"[6] Valley Stream suggests that the Restatement actually supports its contention that the "actually litigated" requirement is satisfied when a default judgment is entered as a sanction for discovery abuse. Specifically, Valley Stream relies on a passage from the Restatement that states in relevant part:

> . . . it is sometimes difficult to determine whether an issue was actually litigated; even if it was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate. But the policy considerations outlined above weigh strongly in favor of nonpreclusion, and it is in the interest of predictability and simplicity for such a result to obtain uniformly.

Restatement (Second) of Judgments § 27 cmt. e. Given that the Restatement contemplates a possible exception to the "actually litigated" requirement, Valley Stream invites this Court to "guess" that a Pennsylvania court would, in the instant circumstances, invoke this exception. Yet where, as here, nothing in Pennsylvania case law invites or predicts this result, federal courts must refrain from either expanding or modifying state law. *See St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995) (federal courts rule upon the law of a state as it exists, and should neither expand that law nor create new law). Thus, the Court adheres to the settled principle of

Pennsylvania law that a default judgment does not operate as a collateral estoppel in a separate cause of action. *See Poole*, 336 A.2d at 367.

Moreover, assuming *arguendo* that this Court chose to invent and invoke an exception to the "actually litigated" requirement, the issues pertinent to dischargeability, namely Schriver's alleged commission of fraud and conversion, were not "essential to the first judgment" as required under the Pennsylvania law of collateral estoppel. *Schubach*, 336 A.2d at 334. As discussed in the Court's February 25, 1998 Memorandum Opinion:

> [j]udgment was entered solely as a sanction for discovery abuse, with no evidence heard and no findings made on Valley Stream's underlying claims. Further, Valley Stream was awarded $41,791.73, the amount alleged under all three counts of its complaint, including the breach of contract count. And, there was no hearing on punitive damages, and no punitive damages were awarded. Thus, the allegations of fraud and conversion in the Pennsylvania complaint were simply not essential to the default judgment entered in that action.

*Schriver*, 218 B.R. at 802. Thus, because the issues dispositive of discharge were not "actually litigated" in the Pennsylvania action, and because, alternatively, they were not essential to the Pennsylvania judgment, the default judgment was not entitled to collateral estoppel effect.

## II.

■ Alternatively, Valley Stream contends that the bankruptcy court made specific findings of fact on the nondischargeability issues sufficient to support its finding. Specifically, Valley Stream relies on the statement of the bankruptcy court judge that:

> [t]he claims, as I said, were for breach of contract, for conversion, and for fraud. And it is asserted in the complaint in paragraph 17 that the Defendant obtained a duplicate copy of the title of the Mercedes Benz which was involved in the loan here. *I find that this was [a] loan for an automobile. And that [Schriver] unlawfully forged [Valley Stream's] name on said*

---

6. Restatement (Second) of Judgments § 27 cmt. e.

*title with the express intent of selling the Mercedes Benz to a third party, and defrauding [Valley Stream] of its ownership thereof.*

Tr. at 37 (emphasis added). Nevertheless, a careful review of the bankruptcy proceeding, and the record as a whole, points persuasively to the conclusion that the evidence before the bankruptcy court was insufficient to support such an independent finding of fact. Rather, it seems clear that in declaring the judgment debt to be nondischargeable, the bankruptcy court relied solely on the collateral estoppel effect of the Pennsylvania court default judgment.

At the adversarial proceeding before the bankruptcy court, Valley Stream relied solely on the Pennsylvania state court record (*i.e.* the complaint, the motion for sanctions, the default judgment, etc.) in support of its claim that the judgment debt was nondischargeable in bankruptcy. No other evidence was adduced. Notably, the bankruptcy court's specific "findings," as highlighted above, were taken verbatim from paragraph 17 of Valley Stream's Pennsylvania complaint. And, while counsel for Valley Stream proffered testimony as to the facts underlying the Pennsylvania transaction, Schriver's counsel contested that version of the facts. Specifically, Schriver's counsel denied the existence of a valid agreement, the forgery of Valley Stream's name, and the perpetration of an unauthorized sale. Moreover, Schriver's counsel announced that Mr. Schriver was present at the hearing and prepared to testify in the event that the bankruptcy court deemed it necessary to reach any issue other than the collateral estoppel effect of the Pennsylvania judgment, *i.e.*, in the event that the court reached the factual issues.[7] Schriver was not asked to testify.

In sum, there was no factual findings made in the bankruptcy court, nor could there have been. No testimony or evidence was adduced apart from the Pennsylvania state court record. Although the parties' counsel made proffers of testimony, those proffers could not serve as a basis for findings, as they conflicted sharply, raising issues of credibility and reliability. Given this, and the record as a whole, it is clear that the bankruptcy court's nondischargeability determination was based solely on the assumed collateral estoppel effect of the Pennsylvania default judgment.[8]

For the reasons here stated, Valley Stream's motion for a rehearing, is denied. But, Valley Stream's motion for a stay pending appeal is granted.

An appropriate Order will issue.

---

7. Specifically, Schriver's counsel stated:
   [Valley Stream's counsel] and I discussed this proceeding previously ... [a]nd I think that one thing that he has inferred but not stated explicitly is his relying solely on the preclusive effect of the Pennsylvania judgment. If he is not successful, he does not intend to call any witnesses. In that case, that would be determined to be dischargeable. Mr. Schriver is here today, if evidence were to be needed in that regard.
   Tr. at 18–19. Following his proffer as to the facts underlying the Pennsylvania transaction, Schriver's counsel stated "that is what [Schriver]

would testify to today, if we were to get to the factual issues, which we are not going to do." Tr. at 21.

8. Nothing in this Memorandum Opinion, or in the Court's February 25, 1998 Memorandum Opinion, should be construed as intimating any view on whether a more developed factual record would require the conclusion that Schriver's judgment debt is not entitled to discharge in bankruptcy. That determination is properly committed to the bankruptcy court judge on remand.