MIRRA COMPANY, INC., Plaintiff

v.

MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 35, Defendant

No. 01–165–P–H.

United States District Court, D. Maine.

Oct. 1, 2002.

David P. Ray, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, Frank P. Spinella, Jr., Hall, Morse, Anderson, Miller & Spinella, Concord, NH, for Mirra Company Inc., plaintiff.

Jerrol A. Crouter, Drummond, Woodsum & MacMahon, Portland, ME, for Maine Shool Administrative District No. 35, defendant.

### ORDER AFFIRMING RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, Chief Judge.

The United States Magistrate Judge filed with the court on August 23, 2002, with copies to counsel, his Recommended Decision on Defendant's Motion for Partial Summary Judgment. The plaintiff filed its objection to the Recommended Decision on September 12, 2002. I have reviewed and considered the Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and determine that no further proceeding is necessary.

It is therefore **ORDERED** that the Recommended Decision of the Magistrate Judge is hereby **ADOPTED**. The defendant's motion for summary judgment on Count III of the Complaint is **GRANTED**.

**SO ORDERED**.

### RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVID M. COHEN, United States Magistrate Judge.

The defendant, Maine School Administrative District No. 35, moves for summary judgment on Count III of the complaint in this action arising out of the construction of a high school building. I recommend that the court grant the motion.

### I. Summary Judgment Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met,

the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

## II. Factual Background

The following undisputed material facts are appropriately presented in the parties' statements of material facts submitted in accordance with this court's Local Rule 56.

The defendant is a Maine school administrative district providing public elementary and secondary education services to students from Eliot and South Berwick, Maine. MSAD 35's Statement of Material Facts in Support of Motion for Summary Judgment on Count III of Mirra's Complaint ("Defendant's SMF") (Docket No. 15) ¶ 1; Plaintiff Mirra Company, Inc.'s Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 20) ¶ 1. The plaintiff is a Massachusetts contractor specializing in site work. *Id.* ¶ 2. This action arises out of a project for site work in connection with the construction of the new Marshwood High School. *Id.* ¶ 3.

The plaintiff submitted the low bid for site work on the project. *Id.* ¶ 4. On June 23, 1997 the parties entered into a site contract. *Id.* ¶ 5. The price for the plaintiff's work under the contract was $2,302,515. *Id.* ¶ 7. In addition to the site contract, the Marshwood High School project included the construction of a high school building. *Id.* ¶ 9. The building contractor for the project was Barletta Engineering Company. *Id.* ¶ 10. The plaintiff's work included preparing the site for construction of the high school and completion of the "finish" site work, including construction of athletic fields, tennis courts, walkways and landscaping. Mirra's Statement of Additional Facts ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF at 9–15) ¶ 4; MSAD 35's Reply Statement of Material Facts, etc. ("Defendant's Responsive SMF") (Docket No. 23) ¶ 4.

The original bidding documents included a schedule for the work that indicated that final completion and occupancy of the building would occur in February 1999. *Id.* ¶ 5. Based on this schedule, the plaintiff planned to complete most of its work before the end of 1998. *Id.* The defendant retained the design firm of TFH Architects to provide the administration of the contract for the construction of the high school. *Id.* ¶ 7. TFH was the defendant's representative during the construction period. *Id.* ¶ 8. In order for the plaintiff to complete its work in a timely manner it was necessary that Barletta complete some portions of its work consistent with the contract deadlines. *Id.* ¶ 16.

Barletta's work did not proceed on the schedule set out in the site contract documents. *Id.* ¶ 17. The plaintiff expressed concern about the pace of the project at a weekly site contract meeting on August 5, 1998. Defendant's SMF ¶ 14; Plaintiff's Responsive SMF ¶ 14. As the 1998 work season progressed into the fall of 1998, the parties discussed the cost of deferring some of the plaintiff's work into the spring

of 1999, but the amount remained uncertain. *Id.* ¶ 15. The site contract meeting minutes for September 16, 1998 note that the plaintiff would "determine the added cost for delaying the remaining work until spring." *Id.* The minutes of the October 21, 1998 meeting state that the plaintiff "will develop costs when they know what they will need to do in the spring." *Id.* ¶ 16.

During the fall of 1998 and on numerous occasions thereafter, Dan Duvall, project manager for the plaintiff, was told by Lori Rohr, a representative of TFH, that she agreed that the plaintiff's work had been affected by delays in the construction of the building and that she agreed that, as a result, the plaintiff was entitled to an adjustment of the contract price and an adjustment of the contract deadlines for completion of its work. Plaintiff's SMF ¶¶ 19–20; Defendant's Responsive SMF ¶¶ 19–20. The plaintiff, TFH and the defendant had several meetings and exchanged numerous letters concerning the plaintiff's ability to perform its work in 1999 and the schedule for completion of the work. *Id.* ¶ 24. On May 14, 1999 a letter from the defendant's counsel to counsel for the plaintiff asserted that the defendant had several claims against the plaintiff arising from the project. *Id.* ¶ 26.

The plaintiff submitted a letter dated June 29, 1999 requesting a change order in the amount of $332,901.43. Defendant's SMF ¶ 17; Plaintiff's Responsive SMF ¶ 17. The letter also requested an extension of the date for substantial completion of the plaintiff's work to September 7, 1999 and for final completion to November 6, 1999. *Id.* The architect responded on July 1, 1999, requesting certain information and referring to Article 19 of the site contract. *Id.* ¶¶ 18–20. The plaintiff responded the following day, asserting that the situation was governed by Article 16 of the site contract. *Id.* ¶¶ 21, 23. On July 14, 1999

the parties and TFH met in an effort to resolve the areas of concern among the parties. Plaintiff's SMF ¶ 31; Defendant's Responsive SMF ¶ 31. In accordance with the agreements made at this meeting, *id.* ¶ 33, Change Order No. 10, dated July 29, 1999, extended the substantial completion date to September 7, 1999 and set November 1, 1999 as the date for final completion, Defendant's SMF ¶¶ 26–27; Plaintiff's Responsive SMF ¶¶ 26–27. A letter dated July 16 was incorporated by reference into the change order. *Id.* ¶ 28. The letter, written by the plaintiff's president, provided in paragraph 5 that "[t]hese acceleration costs, as well as our delay costs, will be submitted to TFH for review, along with our other previous claims." *Id.* ¶ 29. The plaintiff understood that its claim would be handled by TFH as a request for extra or changed compensation under the site contract. Plaintiff's SMF ¶ 35; Defendant's Responsive SMF ¶ 35.

On September 22, 1999 the plaintiff submitted a request for a change order in which it requested $1,249,401.81. Defendant's SMF ¶ 30; Plaintiff's Responsive SMF ¶ 30. The request was submitted pursuant to the terms of Articles 16, 17, 19 and 43 and Change Order No. 10 of the site contract. *Id.* ¶ 31. The response to this claim was a letter from the defendant's counsel to the plaintiff's counsel dated October 27, 1999. Plaintiff's SMF ¶ 37; Defendant's Responsive SMF ¶ 37. After this case was initiated, the plaintiff reduced the amount of the claim to $1,189,958.44. Defendant's SMF ¶ 32; Plaintiff's Responsive SMF ¶ 32. No change order has been executed in response to the September request or to the supplement to the request that reduced the amount of the claim. *Id.* ¶ 33.

### III. Discussion

Count III of the complaint asserts that the defendant violated 10 M.R.S.A. § 1111

*et seq.* by refusing to pay the plaintiff. Complaint (Docket No. 1) ¶¶ 23–24. The defendant contends that this statutory remedy is not applicable to the facts of this case. The statute at issue provides in relevant part:

> Payment to a contractor for work is subject to the following terms.
>
> **1. Contractual agreements.** The owner shall pay the contractor strictly in accordance with the terms of the construction contract.

10 M.R.S.A. § 1113. There is no dispute that the defendant is an "owner" and the plaintiff a "contractor" as those terms are defined for purposes of this statute, or that the subject of their contract was "work" within the statutory definition. 10 M.R.S.A. § 1111(3), (6) & (9).

Several provisions of the site contract are relevant to the plaintiff's statutory claim. The site contract includes a specific paragraph governing payment of the contractor which provides, in relevant part:

> Application for payment as the Work progresses may be made of the Owner, but no more often than once a month, unless due to unusual circumstances the Owner may approve more frequent payments. Said Requisition for Payment shall be based on the proportionate quantities of the various classes of work completed or incorporated in the work in accordance with the Work Progress Schedule and the value thereof determined from the Contract Cost Breakdown.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> After said "Requisition for Payment" has been prepared by the Contractor in the required number of copies, it shall be submitted to the Architect for approval. The Architect shall verify and approve the "Requisition for Payment", and forward all copies to the Owner for processing for payment by the Owner.

New Marshwood High School Site Contract, Section 2–E, State of Maine Contract Agreement, Public School Projects, Exhibit 51 to Deposition of Wesley E. Kennedy, attached to Defendant's SMF at Article 7; Section 3–A, Standard General Conditions for Contract Work for Public School Projects ("Contract General Conditions"), Exhibit A to Affidavit of Daniel W. Duvall in Opposition to SAD 35's Motion for Summary Judgment (Docket No. 21), Article 24.

Article 23 provides:

> If the Work should be stopped under an order of any court, or other public authority, for a period of thirty days, through no act or fault of the Contractor, or of anyone employed by him, then the Contractor may, upon seven days' written notice to the Owner and the Architect, terminate this Contract and recover from the Owner payment for all work executed, and any proven loss sustained upon any Plant or Materials and reasonable profit and damages.
>
> Should the Architect fail to issue any certificate for payment, through no fault of the Contractor, within seven days after the Contractor's formal request for payment or if the Owner should fail to pay to the Contractor within thirty (30) days time after presentation, any sum certified by the Architect, then the Contractor may, upon seven days' written notice to the Owner and Architect, stop the Work or terminate this Contract as set out in the preceding paragraph.

Contract General Conditions Art. 23. Article 25 provides:

> The Architect may withhold or, on account of subsequently discovered evidence, nullify the whole or a part of any certificate to such extent as may be necessary in his reasonable opinion to protect the Owner from loss on account of:
>
> A. Defective Work not remedied.

B. Claims filed or reasonable evidence indicating possible filing of claims.

C. Failure of the Contractor to make payments properly to Subcontractors or for Materials or Labor.

D. A reasonable doubt that the Contract can be completed for the balance then unpaid.

E. Damage to another contractor.

When the above grounds are removed, payment shall be made for amounts withheld because of them.

*Id.* Article 23.

Other relevant paragraphs include Articles 16 and 17.

The Owner reserves the right to increase or decrease any or all of the items of Work indicated in the Plans, Proposal and Contract, or to eliminate any one or more of such items.... All such work shall be executed under the conditions of the original Contract except *that any claim for extension of time caused thereby shall be adjusted at the time of ordering such change.*

In giving instructions, the Architect shall have authority to make minor changes in the Work, not involving extra cost, and not inconsistent with the purposes of the Building or Project, but otherwise, except in an emergency endangering life or property, *no Extra Work or change shall be made unless in pursuance of a duly signed Change Order.*

\*    \*    \*    \*    \*    \*

Should such alterations be productive of increased unit cost, or result in increased unit cost to the Contractor, a fair and equitable sum therefor shall be agreed upon in writing before such Work is begun, and shall be added to or deducted from the Contract Amount, as the case may be, by means of a written Change Order. The Change Order shall that the nature of the charge, the location, the itemized estimate of unit quantities, the basis for payment, *and the reason for the change....*

When the Change Order has been properly signed by all parties and encumbered, it shall become a part of the Contract.

The value of any such Extra Work or change shall be determined in one of the following ways:

A. By estimate and acceptance in a lump sum.

B. By unit prices named in the Contract or subsequently agreed upon.

C. By cost and percentage or by costs and a fixed fee.

If none of above methods is agreed upon, the Contractor, provided he receives an order as above, shall proceed with the work under Case C, and shall keep and present in such form as the Architect may direct, a correct account of the cost, together with vouchers. In any case, the Architect shall certify to the amount. Pending final determination of value, payments on account of changes shall be made on the Architect's certificate.

*Id.* Art. 16 (emphasis in original).

Article 17 provides:

If the Contractor claims that any instructions by Drawings or otherwise involve extra cost under this Contract, he shall give the Architect written notice thereof within 10 days after the receipt of such instructions, and in any event before proceeding to execute the Work, except in emergency endangering life or property, and the procedure shall then be as provided for changes in the work. No such claim shall be valid unless so made.

*Id.* Art. 17. Finally, Article 19 provides:

If the Contractor be delayed at any time in the progress of the Work by any act or neglect of the Owner or the Archi-

tect, or of any employee of either, or by any separate Contractor employed by the Owner, or by changes ordered in the Work ... or any causes beyond the Contractor's control, or by any cause which the Architect shall decide to justify the delay, then the time of completion shall be extended for such reasonable time as the Architect may decide.

\*   \*   \*   \*   \*   \*

This article does not exclude the recovery of damages for delay by either party under other provisions in the Contract Document.

*Id.* Art. 19.

The defendant essentially contends that payment of the $1.2 million to the plaintiff is not due under the terms of the site contract because no change order specifying an amount due has become part of the contract and thus the terms of the contract do not require payment. MSAD 35's Motion for Summary Judgment on Count III of Mirra's Complaint, etc. ("Motion") (Docket No. 14) at 7. The plaintiff responds that Change Order No. 10 does require payment for the claim and that since no amount was specified in that addition to the site contract the only condition precedent to payment on the $1.2 million is the approval of the architect. Mirra's Objection to SAD 35's Motion for Summary Judgment, etc. ("Opposition") (Docket No. 19) at 9–13. It asserts that certification by the architect was required under Article 23 of the site contract within seven days of the submission of its claim and that the failure of TFH to issue a certification was a violation of TFH's "contractual duty." *Id.* at 10. It contends that, while the only remedy specified in Article 23 for such a failure is the ability of the contractor to stop work or terminate the contract, "[i]interpreting the contract as a whole ... it seems only logical that, if the failure to certify within seven days would justify a termination of the contract, it must also

trigger a payment obligation on the part of the owner at least for prompt payment law considerations." *Id.* at 11.

Assuming *arguendo* that the plaintiff's position on the question whether an additional change order is needed under the site contract as a prerequisite for the payment it seeks is correct, its following argument assumes far too much. Section 1113(1) requires an owner to pay a contractor "strictly in accordance with the terms of the construction contract." It does not require an owner to pay a contractor in accordance with the terms of the construction contract as reasonably or equitably extended to circumstances not necessarily contemplated by the parties at the time the contract was executed. The plaintiff's argument would allow the contractor to recover under the statute when the architect refuses to issue a certification in response to the contractor's request for payment when the architect finds the entire request to be unjustified. Surely the Maine legislature cannot have intended the statute to provide a means for contractors to recover amounts to which the owner reasonably believes they are not entitled under the contract between the parties. The Law Court's opinion in *Jenkins, Inc. v. Walsh Bros., Inc.*, 776 A.2d 1229 (Me. 2001), the only reported decision construing the prompt payment statute, does not address directly the issue presented in the instant case, but its rejection of an equitable approach to the computation of damages under the statute, *id.* at 1238–39, strongly suggests that it would reject an equitable approach to construction of the words "strictly in accordance with the terms of the construction contract" in section 1113 as well.

The defendant in this case did assert a claim against the plaintiff that might be considered an offset under 10 M.R.S.A. § 1118, but that issue is not reached under

the circumstances of this case because strict compliance with the terms of the site contract does not require payment of the plaintiff's claim in the absence of TFH's certification.

In the alternative, the plaintiff argues that the contractual requirement of certification should be excused or considered waived under the circumstances of this case. Opposition at 13–14. It relies on two cases from other jurisdictions to support this argument.[1] In *Hartford Elec. Applicators of Thermalux, Inc. v. Alden,* 169 Conn. 177, 363 A.2d 135 (1975), the court's ruling depended upon the fact that the architect whose approval was required for payment was also the owner and the issue was whether the defendant was estopped to raise the lack of approval as a defense, *id.* at 138. In *Haugen v. Raupach,* 43 Wash.2d 147, 260 P.2d 340 (1953), the court noted in *dicta* that a contractual term requiring an architect's certificate as a condition of payment to a contractor would not be enforced if the owner caused the certificate to be withheld without sufficient justification, *id.* at 151, 260 P.2d 340. Both of these cases involved an action directly on the contract and did not involve a claim under a statute that by its terms required strict compliance with the terms of a contract. In addition, the plaintiff has not presented evidence in the summary judgment record that would allow a reasonable factfinder to conclude that TFH was "satisfied that there has been a substantial performance of the contract," that it acted in collusion with the defendant to withhold its certificate, or yielded to pressure from the defendant that was not justi-

fied, the conditions providing a "legal excuse" in the state of Washington. *Id.*

The plaintiff also relies, Opposition at 12, on *Loyal Erectors, Inc. v. Hamilton & Son, Inc.,* 312 A.2d 748 (Me.1973), a case decided twenty years before the prompt payment statute was enacted, Title 10, Chapter 201–A, M.R.S.A., Historical and Statutory Notes. In that case, the Law Court decided that a contract term requiring the architect's approval before payment of retainage to a contractor, 312 A.2d at 751, was enforceable as a condition precedent to payment of the retainage, distinguishing such a condition from past cases in which the court had held that such a requirement for progress payments did not prevent such payments from becoming debts in the absence of such approval, *id.* at 754–55. The payment demanded by the plaintiff in this case, after its work was completed, cannot be accurately described as a "progress" payment and the *dicta* in *Loyal Erectors* would accordingly not be applicable in the instant case, if the wide divergence between the matters actually at issue in the two cases were not sufficient reason to conclude that *Loyal Erectors* is not binding here.

In this case, the contract language does not support the plaintiff's proffered interpretations, and a strict compliance with those terms, as required by section 1113, does not compel payment to the plaintiff of the $1,189,958.44 demanded. Other remedies are available to the plaintiff in this case, but the prompt payment statute does not provide one in the absence of an agreed price that was explicitly stated in

---

1. The plaintiff also relies on a section of the first Restatement of Contracts. Opposition at 13. The proposition set forth in that provision does not appear in the Restatement (Second) of Contracts, which is the version of that treatise currently in effect. In general, a second Restatement supercedes the initial Restatement. *See generally In re Schriver,* 218 B.R. 797, 801 n. 8 (E.D.Va.1998) (Restatement(Second) of Judgments); *Ripple v. Wold,* 549 N.W.2d 673, 675 (1996) (Restatement (Second) of Contracts). Particularly where, as here, the Law Court has not adopted the cited section of the superceded Restatement, I will not rely on it.

the parties' contract, or at least an agreed contractual method by which an amount due can be finally determined. That is not the case here.

## IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment on Count III of the complaint be **GRANTED**.

## NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which* de novo *review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to* de novo *review by the district court and to appeal the district court's order.*